UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| HILLSBOROUGH COUNTY AVIATION AUTHORITY, a body politic under the laws of The State of Florida, | Case No.:8:12-CV-2478-27 TGW |
| v. | |
| HERNANDO COUNTY Board of County Commissioners a body politic under the laws of The State of Florida | |
| HERNANDO COUNTY AVIATION AUTHORITY a body politic under the laws of The State of Florida | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO ABATE
PURSUANT TO §164.1041(2), *FLA. STAT.*
AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Hillsborough County Aviation Authority (hereinafter the "Aviation Authority") opposes Defendant's Motion to Abate Pursuant to Fla. Stat. §164.1041(2) [Dkt 7].[1] In support of this opposition, the Aviation Authority states as follows.

---

[1] The Motion to Abate was brought only in the name of Defendant Hernando County Board of County Commissioners. Hernando County BOCC notes that the Hernando County Aviation Authority did not take any of the actions that are the subject of the Complaint.

-1-

# I. BACKGROUND

This case concerns the Aviation Authority's rights in the Tampa Airport family of trademarks. The oldest of these marks has been in continuous use for well over a half century. Two of the marks are federally registered with the United States Patent and Trademark Office. The Tampa Airport family of marks includes the federally registered marks TAMPA INTERNATIONAL AIRPORT® (Reg. No. 4,252,281) and TAMPAAIRPORT® (Reg. No. 4,259,907) as well as the common law mark TAMPA EXECUTIVE AIRPORT™.

The Defendant's argument for non-infringement rests on the profoundly misplaced belief that "[y]ou can't trademark a place name."[2] This statement is flatly contradicted by over 100 years of case law. Starting with Justice Holmes' 1899 decision in *American Waltham Watch Co. v. United States Watch Co.*, 173 Mass. 85, 53 N.E. 141 (1899) geographic place names have been upheld as valid and strong trademarks.[3] The Defendant cites to a single district court case for the proposition that all geographically descriptive marks are inherently weak. *See American Liberty Ins. Co. v. American Liberty Life Insurance Co.*, 136 U.S.P.Q. 248 (N.D. Ga. 1962). However, far more authority supports the position that "[o]nce proof of secondary meaning is established, a geographical term generally will be protected in the same manner as any 'strong' mark."

---

[2] *See* St. Petersburg Times 11/4/12 "Airport lawsuit pits Hernando County against Bully Hillsborough" (http://www.tampabay.com/news/business/airlines/airport-lawsuit-pits-hernando-county-    against-bully-hillsborough/1259798) (last visited 12/19/2012).

[3] *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506, 161 U.S.P.Q. 129 (2d Cir. 1969) (MISS U.S.A. acquired secondary meaning); *Resorts of Pinehurst, Inc. v. Pinehurst National Corp.*, 148 F.3d 417, 47 U.S.P.Q.2d 1465 (4th Cir. 1998) (PINEHURST had achieved secondary meaning); *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 227 U.S.P.Q. 808 (9th Cir. 1985) (the composite mark CALIFORNIA COOLER for a wine beverage had sufficient secondary meaning to support a preliminary injunction); *Duncan McIntosh Co., Inc. v. Newport Dunes Marina, LLC*, 120 Fed. Appx. 119 (9th Cir. 2005) (NEWPORT BOAT SHOW was geographically descriptive, had acquired secondary meaning and preliminary injunction was granted and affirmed).

2 McCarthy on Trademarks and Unfair Competition § 14:10(4th Edition)(*citing, e.g., North American Aircoach Systems, Inc. v. North American Aviation, Inc.*, 231 F.2d 205 (9th Cir. 1955)).

In order to establish trademark rights in a geographic term, the mark must have acquired "secondary meaning." A prima facie case for secondary meaning is established after the mark has been in continuous use for five years. *See Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007)(citing 15 U.S.C. §1052(f)). In the present case, the TAMPAAIRPORT® mark has been in continuous use for 15 years and the TAMPA INTERNATIONAL AIRPORT® mark has been in continuous use for over 65 years. The Aviation Authority has a strong case for secondary meaning in this case. The Defendant has cited to a handful of examples of regional airports sharing a geographic designation with a larger airport facility. *See* Motion to Abate at Pg. 5. Notably, the Defendant fails to provide any evidence that any of these airport names acquired secondary meaning and actually have protectable trademark rights. Absent such evidence, the Defendant's examples are meaningless as third party infringement is generally considered irrelevant. *Council of Better Bus. Bureaus, Inc v. Better Bus. Bureau of S. Florida, Inc*, 78-937-CIV-SMA, 1978 WL 21729 (S.D. Fla. Aug. 22, 1978). Further, even if the airport names that the Defendant cites have secondary meaning, those airports may have chosen not to enforce their intellectual property rights. Additionally, the prior existence of the name Tampa Bay Executive Airport is similarly meaningless under the same reasoning.

Contrary to the Defendant's arguments, the Airport Authority need not prove that "a traveler would mistakenly travel to Brooksville Tampa Regional Airport believing that

her British Air flight to London departed from that airport." *See* Motion to Abate at Pg. 5. This is simply a misleading attempt to move the goal posts on the standard for trademark infringement. The relevant test is whether the use of the Defendant's competing trademark would result in a "likelihood of confusion." *See* 15 U.S.C. 1125 (a)(1). Notably this likelihood of confusion can be confusion as to source, confusion as to sponsorship, confusion as to affiliation, or confusion as to connection. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 (11th Cir. 2001). The issue presented here is whether someone is likely to mistakenly believe that BROOKSVILLE TAMPA REGIONAL AIRPORT® is somehow sponsored, connected, or affiliated with TAMPA INTERNATIONAL AIRPORT®, TAMPAAIRPORT®, or TAMPA EXECUTIVE AIRPORT™. Given the similarities between the marks and the identical nature of the services provided, such a mistaken belief is not only likely, it is inevitable.

The other straw man argument advanced in Defendant's motion is that the Airport Authority is trying to "monopolize the geographic designation Tampa." *See* Motion to Abate at Pg. 1. This, of course, is not true. A search of the on-line records of the United States Patent and Trademark Office shows 359 trademarks utilizing "Tampa." These include the registered trademarks THE TAMPA TRIBUNE™ (Reg. No. 896,938), THE TAMPA TIMES™ (Reg. No. 3,031,297), TAMPA BAY BUCCANEERS™ (Reg. No. 1,085,102), and TGH TAMPA GENERAL HOSPITAL™ (Reg. No. 3,812,101). The Airport Authority is no more trying to monopolize a geographic designation than any of the hundreds of other trademark owners that utilize a mark that includes TAMPA. Rather, the Aviation Authority is simply upholding trademark rights that it has invested considerable time, money, and effort promoting for over a half century.

Defendant also attempts to claim a fair use defense, arguing that it is merely using "Tampa" in its primary and geographic sense. *See* Motion to Abate at Pg. 7. The facts show otherwise. During the October 23, 2012, meeting of the Hernando County Board of County Commissioners the renaming of Hernando County Airport was debated. One of the individuals involved in this renaming was Michael McHugh, Hernando County's Economic Development Director. Notably, Mr. McHugh made it abundantly clear that "Tampa" was being adopted-- not for geographic reasons-- but for marketing reasons and as part of a "rebranding" effort. In fact, Mr. McHugh's entire presentation was entitled "Airport Rebranding." During his presentation, Mr. McHugh noted,

> But additionally, Tampa has a favorable impression for business. And the Tampa Bay Partnership has done an image study. This is a study that was done to look at what do corporate executives think when they hear the word Tampa. That is certainly part of our target demographic. It is also a highly marketed term. And there's a variety of channels that includes Busch Gardens. Busch Gardens does not say we're in Carrollwood; they say Busch Gardens Tampa Bay. That certainly shows the value of the brand and the effort to market it. We have also prominent organizations, such as the Buccaneers and the Rays, which bring more focus upon the word Tampa.

This quote reveals the true intent behind the Defendant's adoption of the BROOKSVILLE TAMPA REGIONAL AIRPORT mark: to capitalize off the "highly marketed" term TAMPA. But the Defendant is not operating a zoo. Nor does it own a football or baseball team. It operates an airport. And it does so under a mark that was intentionally chosen to piggyback off the marketing efforts of the Aviation Authority. This intent is alone sufficient to infer a likelihood of confusion. *See AmBrit v. Kraft, Inc.*, 812 F.2d 1531, 1542 (11th Cir. 1986); *see also* 4 McCarthy on Trademarks and Unfair Competition § 23:116 (4th Ed.)(noting that the Eleventh Circuit said that even an intent

to "come as close as the law will allow" is an intent to derive benefit from the other party's reputation and "is therefore probative on the likelihood of confusion issue.")

In sum, the Aviation Authority has strong, federally protected rights in the Tampa Airport family of marks. The Defendant is using a confusingly similar mark for identical goods and with the stated intention of capitalizing on the marketing efforts of the Aviation Authority.

## II. ARGUMENT

### A. Significant Legal Rights Will Be Compromised by Applying Chapter 164

As will be discussed in Section C, the Aviation Authority does not believe that Chapter 164 applies to disputes of this nature. However, if it is determined that Chapter 164 does apply, Chapter 164 provides an exception for cases in which significant legal rights are being compromised. That exception applies in the present case.

Chapter 164 need not be complied with if doing so would compromise "significant legal rights." *See* Fla. Stat. §164.1041. Prior to filing this action, the Aviation Authority passed a resolution specifically finding that the Defendant's infringement was causing irreparable harm and that the infringement compromised significant legal rights. *See* Motion to Abate at Ex. A. As detailed in Section I *supra*, the Aviation Authority is likely to prevail in this matter. The 11th Circuit has long held that there is a presumption of irreparable injury once a trademark owner has established a likelihood of success on the merits. *See North American Medical Corporation v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008) ("Our circuit has acknowledged [the presumption] as much on several occasions"). The Defendant attempts to avoid this presumption of irreparable injury by relying upon the U.S. Supreme Court's decision in

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 126 S.Ct. 1837 (2006)(declining to extend the presumption of irreparable injury to patent cases).

But *eBay* is a patent case, and the 11th Circuit has thus far declined to apply the *eBay* holding to trademark cases. *See North American*, 522 F.3d at 1228 ("we decline to address whether such a presumption is the equivalent of the categorical rules rejected by the Court in *eBay*.")[4] Moreover, even without the presumption, irreparable injury exists in situations where a court finds a loss of control of reputation, loss of trade, and loss of goodwill, and the possibility of confusion. *See Bentley Motors Ltd. Corp. v. McEntegart*, 2012 WL 4792820, *8 (*citing Ferrell Gas Partners LP v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005). All of these situations apply in the present case.[5]

Significant legal rights will also be compromised if the Aviation Authority is required to mediate this matter in public, as is required under some provisions of Chapter 164. *See, e.g.,* Fla. Stat. §164.1055. Other governmental agencies, not a party to this lawsuit, would also be permitted to participate in the mediation process (Fla. Stat. §164.1052). Such a procedure may be preferred when the dispute involves the siting of a garbage collection facility or allocating water resources, but it is wholly ineffective for mediating a commercial dispute such as the one before the Court.

By contrast, any mediation conducted under the rules of this Court would invariably be confidential. This confidentiality is provided by Fed. R. Evid. 408, which excludes from evidence any statements made during compromise negotiations. The

---

[4] Defendant's motion erroneously refers to *North American Medical Corporation v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008) as being from the 1st Circuit.
[5] The Defendant notes that the Aviation Authority has not filed for a TRO or preliminary injunction. The Aviation Authority did not seek a preliminary injunction because the Defendant's use of the BROOKSVILLE TAMPA REGIONAL AIRPORT mark was initially very limited. That situation has changed, as the Defendant is now widely using the mark. As such, the Aviation Authority will be seeking a preliminary injunction in the immediate future.

confidentiality is also provided by Local Rule 9.07(b), which states that "all proceedings of the mediation conference, including statements made by any party attorney, or other participant, are privileged in all respects." Any effective mediation in this case will involve the Aviation Authority detailing the extent of its rights in the Tampa Airport family of marks. The Aviation Authority will likely discuss, for example, acceptable marks that it views as non-infringing. The Aviation Authority should have the right to discuss these matters in a confidential and privileged setting. Unfortunately, this would not be the case if the Aviation Authority is forced to participate in Chapter 164 proceedings. This represents yet another significant legal right that would be lost if this case is abated. Thus, the Aviation Authority respectfully requests that Defendant's Motion to Abate be denied.

### B. Chapter 164 is Preempted by the Lanham Act

Even if this Court disagrees with the construction advanced above, Chapter 164 still cannot be applied as it is preempted by the Aviation Authority's federal Lanham Act claims.

The Supremacy Clause of the U.S. Constitution (Article VI, Clause 2) establishes the U.S. Constitution and Federal Statutes as the "supreme law of the land" and empowers Congress to preempt state law. *See Martinez v. Ford Motor Co.*, 488 F.Supp.2d 1194, 1196 (MD Fla. 2007). Federal preemption of state law can occur if: i) Congress occupies an entire area of law; ii) Congress specifically preempts state law; or iii) there is a conflict between the state and federal laws. *See id.* In the present case, the latter two forms of preemption apply.

### 1. Specific Preemption

In passing the Lanham Act, Congress specifically noted that its purpose was to "protect registered marks used in such commerce from interference by State, or territorial legislation." *See* 15 U.S.C. §1127. As such, "[i]f a conflict arises between federal and state law, including state registration statutes, the Lanham Act effects a limited preemption of state law, resolving the conflict in favor of the federal registrant's rights." *Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1284 (4th Cir. 1987)*(citing Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904, 907–08 (7th Cir.1968)); *Minuteman Press International, Inc. v. Minute-Men Press,* 219 U.S.P.Q. 426, 432 (N.D.Cal.1983).

Chapter 164 interferes with the Lanham Act by outlining a number of time consuming and costly procedures. All of the procedures in Chapter 164 must be followed before a party may "avail themselves of any otherwise available legal rights." *See* Fla. Stat. 164.1056. These procedures include: formally initiating a conflict resolution procedure (Fla. Stat. 164.1052(1)); giving other unrelated governmental entities the ability to participate in the conflict resolution process (Fla. Stat. 164.1052(2)); publicly noticing a conflict assessment meeting (Fla. Stat. 164.1053); attending a joint public meeting (Fla. Stat. 164.1055); and finally, mediating the dispute (Fla. Stat. 164.1055). Even under the most optimistic timetables, the Chapter 164 proceedings would last for four months or longer. Additional delays would result if other governmental agencies decided to participate. The procedures of Chapter 164 are likely needed when resolving a municipal annexation or the siting of an elementary school, but they have little applicability to the present trademark dispute.

The Florida Legislature improperly interferes with federal law by requiring the Aviation Authority to comply with Chapter 164 before availing itself of "otherwise available" rights under the Lanham Act. *See* Fla. Stat. 164.1056. This is precisely the type of interference via state legislation that the Lanham Act preempted in 15 U.S.C. §1127. In view of this express preemption, Chapter 164 should be interpreted as inapplicable to proceedings under the Lanham Act and Defendant's Motion to Abate should be denied.

### 2. Conflict Preemption

Conflict preemption occurs when a state law conflicts with a federal law, thereby making it impossible to comply with both, or where the state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. *See Irving v. Mazada Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998). In the present case, Chapter 164 contains an attorney fees provision that conflicts with the attorney fees provision in the Lanham Act.

The Aviation Authority's Complaint contains only one statutory basis for recovering attorney fees. Specifically, 15 U.S.C. §1117 allows a prevailing party to recover reasonable attorney fees in "exceptional cases." This is generally interpreted to require the infringing party to act in a malicious, fraudulent, deliberate, or willful manner. *See Burger King Corp. v. Pilgrim's Pride Corp*, 15 F.3d 166, 168 (11th Cir. 1994). By contrast, Chapter 164 provides an attorney fees award to the prevailing party if the non-prevailing party fails to participate in the Chapter 164 proceedings in good faith. *See* Fla. Stat. §164.1058. The Defendant has threatened to seek such penalties in the future, as the final sentence of its motion coyly asks the Court to "reserve ruling on any penalties under

§164.1058, *Fla. Stat.*" Yet, this "penalty" is found nowhere in the Lanham Act, nor is it provided for under any of the other causes of action currently pled. Rather, Defendant is impermissibly attempting to graft the attorney fees provisions of Chapter 164 into 15 U.S.C. §1117 of the Lanham Act.

The Defendant will invariably attempt to reply upon a handful of cases outside of the 11th Circuit that have determined that the Lanham Act does not necessarily preempt damages provisions in related state trademark statutes. *See Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006); *Tonka Corp. v. Tonk-A-Phone, Inc.*, 805 F.2d 793 (8th Cir. 1986). But those cases are easily distinguished. In those cases, the defendant was simply substituting the damages provision in the Lanham Act (i.e. 15 U.S.C. §1117(a)) with the damages provision in a related state trademark act. The parties in those cases were simply electing remedies from different counts in the complaint. By contrast, the Defendant here is injecting an attorney fees provision from a completely unrelated and un-pled statute into a Lanham Act claim. Cobbling together Chapter 164 with the Lanham Act in this manner is impermissible and without precedent. A comparison of the conflicting attorney fees provisions is included below.

| Florida Statute 164.1058<br>Penalty | Lanham Act 15 U.S.C. 1117(a)<br>Recovery for Violation of Rights<br>Profits; damages and costs; attorney fees |
|---|---|
| If a primary conflicting governmental entity fails to participate in good faith in the conflict assessment meeting, mediation, or other remedies provided for in this act, ***the primary disputing governmental entity that failed to participate in good faith shall be required to pay the attorney's fees and costs in that proceeding of the prevailing primary conflicting governmental entity.*** | When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a)or (d) of this title, or a willful violation under section 1125 (c)of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and ***(3) the costs of the action.*** The court shall assess such profits and damages or |

|  | cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. ***The court in exceptional cases may award reasonable attorney fees to the prevailing party.*** |
|---|---|

Defendant's motion should be denied insomuch as Chapter 164 is preempted by the Aviation Authority's federal Lanham Act claims.

**C. Chapter 164 Does not Apply to Commercial Disputes**

The Defendant is urging this Court to abate this action in favor of the procedures outlined in Fla. Stat. Chapter 164. Chapter 164, however, only applies when governmental entities are involved in disputes concerning traditional governmental functions, such as municipal annexation or the siting of an elementary school. It does not apply to commercial disputes, such as the trademark and false advertising claims presented here.

Fla. Stat. 164.1051 states that it is not the intent of the act to limit the conflicts that may be considered under Chapter 164. Nonetheless, immediately following this statement is a listing of the types of "governmental conflicts" that are governed by Chapter 164. Trademarks disputes are not enumerated. In fact, none of the enumerated

examples involve disputes of a commercial nature. All of the examples involve traditional governmental functions. The examples listed in Fla. Stat. 164.1051 are:

> (1) Any issue relating to local comprehensive plans or plan amendments prepared pursuant to part II of chapter 163, including, but not limited to, conflicts involving levels of service for public facilities and natural resource protection.
> (2) Municipal annexation.
> (3) Service provision areas.
> (4) Allocation of resources, including water, land, or other natural resources.
> (5) Siting of hazardous waste facilities, land fills, garbage collection facilities, silt disposal sites, or any other locally unwanted land uses.
> (6) Governmental entity permitting processes.
> (7) Siting of elementary and secondary schools.

Fla. Stat. §164.1051.

Under the principle of *ejusdem generis* a general statutory term must be interpreted in light of the specific terms that surround it. *See Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000)(holding that "legal relief" in Fair Labor Standards Act excludes punitive damages given surrounding statutory language regarding compensatory damages). Stated differently, where certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly understood to cover only things *ejusdem generis*; that is, of a kind like unto those particularly enumerated. *See In Re Horne's Estate,* 171 So.2d 14, 16 (2nd DCA 1965). In this case, the "governmental conflicts" referenced Fla. Stat. 164.1051 must be construed in light of the specific examples identified. This construction necessarily excludes commercial disputes. Moreover, there is no case law or legislative history suggesting that Chapter 164 is applicable to commercial disputes.

In the present case, the Aviation Authority has pled causes of action for False Designation of Origin and False Advertising under the Lanham Act, Trademark

Infringement under Florida Common Law, and Trademark Dilution under Florida Statute §495.151. By definition, each of these causes of action necessarily involves use of a mark "in commerce." All of the Aviation Authority's claims are, by definition, commercial in nature. This is not a case involving traditional governmental functions. Chapter 164 does not apply and Defendant's Motion to Abate should be denied.

### III. CONCLUSION

For the foregoing reasons, urges this Court to deny Defendant's Motion to Abate Under Fla. Stat. §164.1041(2).

Date: January 14, 2013                    Respectfully submitted,


                                        */s/ Michael J. Colitz, III*
                                        Michael J. Colitz, III
                                        Florida Bar No.: 164,348
                                        Debra Deardourff Faulk
                                        Florida Bar No.: 634,425
                                        GrayRobinson, P.A.
                                        401 E. Jackson Street., Suite 2700
                                        Tampa, FL 33602
                                        Tel: (813) 273-5000
                                        Fax: (813) 273-5145
                                        michael.colitz@gray-robinson.com
                                        debra.faulk@gray-robinson.com


### CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a copy to all counsel of record.


                                        */s/ Michael J. Colitz, III*
                                        Michael J. Colitz, II