UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HILLSBOROUGH COUNTY
AVIATION AUTHORITY, a Body politic
under the laws of the State of Florida,

        Plaintiff,

v.                                 CASE NO. 8:12-CV-2478-27 TGW

HERNANDO COUNTY Board of
County Commissioners, a body politic under
the laws of the State of Florida, and
HERNANDO COUNTY AVIATION
AUTHORITY, a body politic under the laws
of the State of Florida,

        Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) & 17(B) FOR LACK OF STANDING

Defendants HERNANDO COUNTY and HERNANDO COUNTY AVIATION

AUTHORITY ("HERNANDO COUNTY")[1], by and through undersigned counsel, move this

Court pursuant to Fed. R. Civ. P. 12(b)(1) and 17(b) for an Order dismissing this lawsuit for lack

of subject matter jurisdiction based on the fact that Plaintiff lacks standing to bring this action.

### MEMORANDUM OF LAW

#### Summary of Argument

The HILLSBOROUGH COUNTY AVIATION AUTHORITY ("HCAA") brought this

trademark infringement action claiming that HERNANDO COUNTY'S naming of its airport:

---

[1]     The Complaint names the "Hernando County Aviation Authority" as a defendant. With regard to the Complaint's underlying subject matter, however, the Authority serves merely as an advisory committee for the Hernando County Board of County Commissioners. *Compare* Hernando County Code §3-18 (requiring all Authority votes on non-aviation related matters to be approved by the County Commission) *with* Hernando County Code §3-25 ("Any action of the authority shall be subject to the approval or disapproval by the board of county commissioners."). Accordingly, the Hernando County Board of County Commissioners, not the Hernando County Aviation Authority, took the actions that are the subject of the Complaint.

the "Brooksville-Tampa Regional Airport" infringes HCAA's alleged trademark rights in the names TAMPA INTERNATIONAL AIRPORT® and TAMPAAIRPORT®.[2]  Although couched in terms of trademark infringement and unfair competition, the crux of the dispute is whether one governmental entity can prohibit another from using the geographic designation "Tampa" to identify an airport located in the Tampa Region of Florida.

HCAA can only bring this action if it has statutory authority to own, hold and enforce trademarks. It does not. HCAA has thus exceeded its statutory powers by seeking to register the subject marks and lacks standing to maintain this action.

### Factual Background

Plaintiff operates the Tampa International Airport. *See* Compl. ¶18. Beginning in 2009, Plaintiff adopted the name "Tampa Executive Airport" for an airport facility in unincorporated Hillsborough County at 6582 Eureka Springs Road. This airport previously operated under the name "Vandenberg Airport."[3]  *See* Compl. ¶14.

HERNANDO COUNTY operates an airport located in Brooksville, Florida. The airport was founded during World War II as the Brooksville Army Airfield. The airport is not served by any commercial airlines and has no regular cargo air service. Until recently, the airport was known as the Hernando County Airport. On October 23, 2012, as the result of a long process of evaluating the marketing of the airport and its facilities at the urging of local regional planning groups, HERNANDO COUNTY changed the name of the airport to "Brooksville-Tampa Regional Airport." The primary purpose in the name change was to identify the airport as being within the Tampa Region.

---

[2]      When HCAA initiated this action, these marks had not been federally registered. HCAA filed its Amended Complaint on January 26, 2013 alleging federal registration of both marks.
[3]      Until at least 2004, a third-party unaffiliated with Plaintiff operated an airport located off of State Road 54 in Odessa, Florida, under the name "Tampa Bay Executive Airport."

## ARGUMENT

**I.    The Power of Florida State Governmental Entities to Own, Hold and Enforce Trademarks is Exceedingly Limited.**

"A [Florida] statutory agency does not possess any inherent powers; such agency is limited to powers granted expressly or by necessary implication, by the statutes creating (the agency)." *St. Regis Paper Co. v. State By and Through Florida Air and Water Pollution Control Commission,* 237 So.2d 797, 799 (Fla. 1st DCA 1970).  For this reason, Florida state agencies can only own, hold and enforce trademarks if the State Legislature specifically grants authority for the agency to do so.  *See Florida Virtual School v. K12, Inc.,* 2012 WL 2920998 at *2-3, 103 U.S.P.Q.2d 1853, 1854-55 (M.D. Fla. 2012)(finding agency lacked power to own trademarks).

Many Florida state agencies and entities are expressly granted the express right to hold and enforce trademarks.  For example, the Florida Department of the Lottery has this power under Fla. Stat. §24.105(10)(2010), as does the Division of Historical Resources of the Florida Department of State under Fla. Stat. §§267.7031(2)(a)1& 267.074(2)(d)(2010).  Nevertheless, the Legislature has also enacted Fla. Stat. §§286.021 & 286.031 which provide:

> **286.021  Department of State to hold title to patents, trademarks, copyrights, etc.**—The legal title and every right, interest, claim or demand of any kind in and to any patent, trademark or copyright, or application for the same, now owned or held, or as may hereafter be acquired, owned and held by the state, or any of its boards, commissions or agencies, is hereby granted to and vested in the Department of State for the use and benefit of the state; and no person, firm or corporation shall be entitled to use the same without the written consent of said Department of State.

> **286.031  Authority of Department of State in connection with patents, trademarks, copyrights, etc.**—The Department of State is authorized to do and perform any and all things necessary to secure letters patent, copyright and trademark on any invention or otherwise, and to enforce the rights of the state therein; to license, lease, assign, or otherwise give written consent to any person, firm or corporation for the manufacture or use thereof, on a royalty basis, or for such other consideration as said department shall deem proper; to take any and all

action necessary, including legal actions, to protect the same against improper or unlawful use or infringement, and to enforce the collection of any sums due the state and said department for the manufacture or use thereof by any other party; to sell any of the same and to execute any and all instruments on behalf of the state necessary to consummate any such sale; and to do any and all other acts necessary and proper for the execution of powers and duties herein conferred upon said department for the benefit of the state.

Thus, even where the Legislature has granted express authority to a state agency to hold and enforce trademarks, it is the Department of State that has the authority to hold, register and enforce such trademark rights in the absence of express language to the contrary. *See Fla. AGO 2000-13,* 2000 WL 202137 (Fla. A.G. 2000).

Recently, in *Florida Virtual School*, this Court considered a somewhat analogous situation to the instant case. In *Florida Virtual School*, the plaintiff state agency sued the defendant for alleged trademark infringement of a federally-registered trademark allegedly owned by the agency. The agency's enabling legislation stated in part as follows:

> The board of trustees may acquire, enjoy, use, and dispose of patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein. Ownership of all such patents, copyrights, trademarks, licenses, and rights of interest thereunder or therein shall vest with the state....

Fla. Stat. §1002.37(2)(c).

In construing this enabling language, this Court concluded that the plain language of the statute vested ownership of the trademark in the State of Florida, not the agency. *See Florida Virtual School,* 2012 WL 2920998 at *3, 103 U.S.P.Q.2d at 1855. Further, this Court rejected the plaintiff's argument that it was an exclusive licensee entitled to bring an infringement action in its own name. *Id.* Consequently, this Court dismissed the case due to lack of standing. *Id.*

II.   **Independent Special Districts, such as the HCAA, only Possess the Powers Expressly Granted by the Florida Legislature.**

Municipalities and Counties are granted "broad" governmental, corporate and proprietary powers to perform municipal and county functions and render municipal and county services. *See* Art. VIII, §§1 & 2, Fla. Const.; *D'Agastino v. City of Miami,* 2013 WL 238217 at *1 (Fla. 3d DCA 2013); *City of Aventura v. Masone,* 89 So.3d 233, 235 (Fla. 3d DCA 2011); *Miami-Dade County ex rel. Walthour v. Malibu Lodging Investments, LLC,* 64 So.3d 716, 719-720 (Fla. 3d DCA 2011). These powers are referred to as "home rule" powers and permit counties and municipalities to exercise any powers for county and municipal purposes except as otherwise provided by law. *Id.*

Independent Special Districts, unlike counties and municipalities, lack "home rule" powers. Like state agencies, independent special districts,[4] such as HCAA, only possess the powers expressly granted to them by the Florida Legislature. *See Board of Commissioner's of Jupiter Inlet District v. Thibadeau,* 956 So.2d 529, 533 (Fla. 4th DCA 2007). Thus, special districts possess no inherent powers to act beyond those powers which their enabling legislation expressly or by necessary implication bestow on them. *See Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District,* 82 So. 346, 351 (Fla. 1919); *Halifax Drainage District of Volusia County v. State,* 185 So. 123, 129 (Fla. 1938); *State ex rel. Davis v. Jumper Creek Drainage District,* 14 So. 2d 900, 901 (Fla. 1943)(because the districts are creatures of statute, each board of supervisors must look entirely to the statute for its authority); *Roach v. Loxahatchee Groves Water Control District,* 417 So. 2d 814 (Fla. 4th DCA 1982); *see also* Ops. Att'y Gen. Fla. 2011-02 (2011), 89-34 (1989), 96-66 (1996), 98-20 (1998), and 04-26

---

[4]      Fla. Stat. §189.403(3) defines a "special independent district" as "a special district that is not a dependent special district as defined in subsection (2). A district that includes more than one county is an independent special district unless the district lies wholly within the boundaries of a single municipality."

(2004). "Moreover, any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof." Fla. Att'y Gen. Op. 2011-02 (2011); *Halifax Drainage District of Volusia County v. State*, supra; *State ex rel. Greenberg v. Florida State Board of Dentistry*, 297 So. 2d 628 (Fla. 1st DCA 1974), cert. dismissed, 300 So. 2d 900 (Fla. 1974); *City of Cape Coral v. GAC Utilities, Inc., of Florida*, 281 So. 2d 493 (Fla. 1973).

### III.   HCAA's Enabling Act Does Not Expressly Empower the Ownership or Enforcement of Trademarks.

On April 13, 2012, the Governor approved Chapter 2012-234, which codified, reenacted and amended the laws creating and authorizing HCAA as an independent special district. *See* Ex. "A." All prior legislation pertaining to the HCAA was expressly superseded and repealed.

Most pertinent to this Court's inquiry regarding standing is Section 6 in which the Legislature sets forth the powers of HCAA. Significantly, and ultimately dispositive, is the absence of any mention of trademarks. Nevertheless, the following powers are the most tangentially relevant to the issue before the Court:

> (2)   The Authority has the power to and may:
> ***
> (j)   Sue and be sued.
> ***
> (l)   Publish advertisements.
> ***
> (w)   Advertise, promote, and encourage the use and expansion of facilities within its jurisdiction.
> ***
> (kk)   Apply for, hold, and periodically transfer alcoholic beverage licenses as provided by this act.
> ***
> (vv)   Transact the business of the Authority and exercise all powers necessarily incidental to the exercise of the general and special powers granted in this act and under any other law.

*\*\**

  (xx) Do all acts and things necessary or convenient for the promotion of its business and the general welfare of the Authority.

Importantly, the enabling act neither mentions nor grants express power for HCAA to own, hold, register or enforce trademarks. Clearly, the Legislature knows how to grant similar specific powers as reflected in Section 6(2)(kk) where HCAA is granted the power to "[a]pply for, hold, and periodically transfer alcoholic beverage licenses ...."

  Moreover, it is beyond question that the Legislature knows how to grant the power to own, hold, register and enforce trademarks to state agencies and entities. *See, e.g.*, Fla. Stat. §24.105(10) (expressly empowering the Department of the Lottery to "hold patents, copyrights, trademarks, and service marks, and to enforce its rights with respect thereto"); Fla. Stat. 267.7031(2)(a)1 & 267.074(2)(d)(expressly empowering the Division of Historical Resources of the Department of State to "exercise the right of trademark over the terms 'Great Floridian' or 'Great Floridians' or 'Florida Heritage' or 'Heritage Florida'); Fla. Stat. §288.9015(2)(j)(expressly empowering Enterprise Florida, Inc. to "[a]cquire, enjoy, use, and dispose of patents, copyrights and trademarks and any licenses, royalties, and other rights and interests thereunder and therein"); Fla. Stat. §331.305(4)(expressly empowering Space Florida to "[a]cquire, enjoy, use, and dispose of patents, copyrights and trademarks and any licenses and other rights and interests under or in such licenses"); Fla. Stat. §1002.37(2)(c)(expressly empowering Florida VirtualSchool to "[a]cquire, enjoy, use, and dispose of patents, copyrights and trademarks and any licenses and other rights and interests under or in such licenses").[5]

---

[5] There are at least 14 instances in which the Florida Legislature has explicitly granted authority for a state entity to acquire, enjoy and use trademarks. In addition to the examples above are: Fla. Stat. §20.43(8)(Department of Health); Fla. Stat. §215.4701(1)(State Board of Administration on behalf of the Florida Retirement System); Fla. Stat. §282.702(5)(Department of Management Services); Fla. Stat. §334.049(2)(Department of Transportation); Fla. Stat. §373.608(1)(Water Management Districts); Fla. Stat. §601.101(Department of Agriculture); Fla. Stat.

The absence of such an explicit grant of the power to acquire, enjoy, use, and dispose of trademarks is strong evidence that the Legislature did not grant such authority to HCAA. *See Department of Environmental Protection v. Landmark Enterprises, Inc.,* 3 So.3d 434, 436 (Fla. 2d DCA 2009)("If the legislature desired the [Department of Environmental Protection] to act as a receiver, it knew how to do so, as illustrated by instances where it empowered other state agencies to so act when needed."); *University of Florida Bd. Of Trustees v. Andrew,* 961 So.2d 375, 377 (Fla. 1st DCA 2007)("[A]s appellees point out, the legislature used the term 'branch campus' in other statutes, including five provisions that were passed in the same legislative session as the statute in question .... There is no question that the legislature could have chosen that particular term again if it wanted to.")

Doubtless, HCAA will argue that it was empowered to own, hold, register and enforce trademarks by the general language of Section 6(2)(vv) & (xx). Of course, when construing a statute, "[i]nference and implication cannot be substituted for clear expression." *Carlile v. Game and Fresh Water Fish Commission,* 354 So.2d 362, 364 (Fla. 1977). Further, "courts are not at liberty to add words to a statute that were not placed there by the legislature." *Lawnwood Medical Center, Inc. v. Seeger,* 990 So.2d 503, 512 (Fla. 2008).

"Legislative intent may also be verified by examining other uses of the same or similar language in similar contexts." *University of Cent. Florida Bd. of Trustees v. Turkiewicz,* 21 So.3d 141, 145 (Fla. 5th DCA 2009). As the Legislature has demonstrated its ability to use express empowering language regarding trademarks when it intends to do so, it follows that the mere presence of general language such as that in Section 6(2)(vv) & (xx) cannot substitute for the omission of express enabling language.

---

§1001.451(5)(Regional Consortium Service Organizations); Fla. Stat. §1001.64(5)(Florida Colleges' Boards of Trustees); Fla. Stat. §1004.447(2)(e)(Florida Institute for Humane and Machine Cognition, Inc.).

The enacting legislation for Space Florida is especially instructive. In that legislation, the Legislature both provided clear and express language empowering Space Florida to acquire, use and enjoy trademarks, *and* included a similar general enabling provision. *See* Fla. Stat. §331.305(7)(Space Florida may "[h]ave and exercise all powers necessary or convenient to effect any or all purposes for which it is organized"). If such general language was sufficient to authorize Space Florida to acquire, use and enjoy trademarks, there was no need for the Legislature to provide the specific provision in Fla. Stat. §331.305(4) regarding trademarks.

**IV.   As HCAA lacks the Capacity to Sue for Trademark Infringement, this Action must be dismissed pursuant to Fed. R. Civ. P. 17.**

While the Legislature did authorize HCAA the power to sue and be sued, it did not include provide HCAA with any rights to own trademarks. HCAA therefore lacks the capacity to sue for trademark infringement. Dismissal is appropriate pursuant to Fed.R.Civ. 17. *See Gonzalez by and through Gonzalez v. Reno,* 86 F. Supp.2d 1167, 1183 (S.D. Fla. 2000).

## CONCLUSION

The Florida Legislature declined to grant HCAA the power to hold, use, register and enforce trademarks. Notwithstanding, HCAA registered trademarks with the United States Patent and Trademark Office and is now seeking to enforce these trademarks. These actions are *ultra vires.* HCAA lacks these powers. Hence, HCAA lacks standing or the capacity to sue for trademark infringement. Accordingly, this action should be dismissed for lack of subject matter jurisdiction and under Fed.R.Civ.P. 17(b).

*Frank R. Jakes*
FRANK R. JAKES, FBN #372226
(Trial Counsel)
JOSEPH J. WEISSMAN, FBN #0041424
JOHNSON, POPE, BOKOR,
   RUPPEL & BURNS, LLP
403 E. Madison Street, Suite 400
Tampa, FL 33602
Telephone:  (813) 225-2500
Facsimile:  (813) 223-7118
E-Mail:  frankj@jpfirm.com

and

JON A. JOUBEN, FBN #149561
Hernando County Attorney's Office
20 N. Main Street, Room 462
Brooksville, FL 34601-2817
Telephone: (352) 754-4122
Facsimile: (352)754-4001
E-mail: JJouben@co.hernando.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the CM/ECF System of the Clerk's Office of the United States District Court, which will send a copy to the following:

Stefan V. Stein
Michael J. Colitz, III
Debra Deardourff Faulk
GrayRobinson, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL  33602

Gigi Garber Rechel
General Counsel
Hillsborough County Aviation Authority
P.O. Box 22287
Tampa, FL  33622

on the 15th day of February, 2013.

*Frank R. Jakes*
FRANK R. JAKES, FBN #372226
JOSEPH J. WEISSMAN, FBN #0041424
JOHNSON, POPE, BOKOR,
  RUPPEL & BURNS, LLP
403 E. Madison Street, Suite 400
Tampa, FL 33602
Telephone:  (813) 225-2500
Facsimile:  (813) 223-7118
E-Mail:  frankj@jpfirm.com

1307989

# CHAPTER 2012-234

## Committee Substitute for House Bill No. 575

An act relating to the Hillsborough County Aviation Authority; codifying, reenacting, and amending the Authority's special acts; providing that the act is a reviser; deleting provisions which have expired, have had their effect, have served their purpose, or have been impliedly repealed or superseded; replacing incorrect cross references and citations; correcting grammatical, typographical, and like errors; removing inconsistencies and redundancies; improving clarity and facilitating correct interpretation; clarifying definitions; providing that independent special districts operate to serve a public purpose; incorporating specific references to existing practices; clarifying procedure for election of members; clarifying that advertisement provisions pertain to sealed bids and other competitive selection processes when and as required; clarifying employment responsibilities; clarifying procedures for manual execution of instruments on behalf of the Authority; providing that the Authority can dispose of personal property, derelict or abandoned aircraft, and derelict or abandoned vehicles in accordance with existing statutory law; deleting the requirement that the Authority may not hold alcoholic beverage licenses exceeding a certain number; clarifying the requirements for award of contracts and clarifying when such requirements do not apply; providing for recodification; repealing chapters 2003-370 and 2007-292, Laws of Florida, relating to the Authority; providing a savings clause; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Pursuant to s. 189.429, Florida Statutes, this act constitutes the codification of all special acts relating to the Hillsborough County Aviation Authority. It is the intent of the Legislature in enacting this law to provide a single, comprehensive special act charter for the Authority, including all current legislative authority granted to the Authority by its several legislative enactments and any additional authority granted by this act.

Section 2.   Chapters 2003-370 and 2007-292, Laws of Florida, relating to the Hillsborough County Aviation Authority, are codified, reenacted, amended, and repealed as provided in this act.

Section 3.   The charter for the Hillsborough County Aviation Authority is re-created and reenacted to read:

Section 1.   Short title.—This act may be cited as the "Hillsborough County Aviation Authority Act."

Section 2.   General provisions.—

1

CODING: Words stricken are deletions; words underlined are additions.

EXHIBIT

A

(1)   It is the intent of the Legislature that this act supersede chapters 2003-370 and 2007-292, Laws of Florida, relating to the Hillsborough County Aviation Authority, and is a codification, a compilation of previously existing legislation relating to the Authority.

(2)   The codification is also to act as a reviser's bill, deleting provisions which have expired, have had their effect, have served their purpose, or have been impliedly repealed or superseded; replacing incorrect cross references and citations, correcting grammatical, typographical, and like errors; removing inconsistencies and redundancies; and improving clarity and facilitating correct interpretation. It is the intent of the Legislature to define frequently used terms and to reflect standard business practices required for an independent special district to conduct its business which have not been previously enumerated.

(3)   The Authority shall comply with federal law regarding expenditure of federal moneys.

(4)   This act shall not be construed as impairing or infringing upon any rights, privileges, or benefits enjoyed by any employee of the Authority who is so employed on the effective date of this act.

(5)   The members and employees of the Authority shall comply with part III of chapter 112, Florida Statutes, as may be amended from time to time.

(6)   This act provides an additional, alternative, and complete method for the exercise of the powers granted and authorized by this act and shall be regarded as supplemental to powers conferred by other laws and shall not be regarded as a derogation of any powers now existing.

(7)   The Legislature declares that independent special districts operate to serve a public purpose and are a legitimate method available for use by the public sector to manage, own, operate, construct, and finance basic capital infrastructure, facilities, and services.

(8)   Regarding the airport facilities and concessions, the Legislature finds and declares:

(a)   The proper operation of the publicly owned or operated airports in the County is essential to the welfare of the people of the Tampa Bay area, the state, and its people.

(b)   The publicly owned or operated airports in the County establish a vital transportation link between the state and the economic systems of the nation and the world and enable the state to enjoy and provide the benefits of an international tourist and commercial center.

(c)   The economic validity and stability of the publicly owned or operated airports in the County is a matter of statewide importance.

2

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(d)   The policy of this state is to promote the development of commerce and tourism to secure to the people of this state the benefits of those activities conducted in the state.

(e)   The proper operation of the publicly owned or operated airports in the County is essential to the welfare of the state and its people, and the Legislature recognizes and affirms such operation as a governmental function to be discharged in furtherance of the policy of securing the benefits of commerce and tourism for the state and its people.

(9)   The Authority shall manage airport facilities and grant airport concessions to further the development of commerce and tourism in or affecting the Tampa Bay area and the state. In managing its facilities and granting concessions for services to the public, the Authority shall promote the development of commerce and tourism by:

(a)   Securing a diversity of airport services.

(b)   Avoiding wasteful duplication of such services.

(c)   Securing to the users of airports safe, courteous, and quality service.

(d)   Limiting or prohibiting business competition which is destructive to the ends of promoting commerce and tourism in the state.

(e)   Allocating limited airport resources to promote such ends.

(f)   Fostering Florida's image as a commercial and tourist center.

Section 3.   Definitions.—As used in this act, unless otherwise specifically defined or unless another intention clearly appears:

(1)   "Advertisement" means a notice published at least once a week for 2 consecutive weeks in at least two newspapers of general circulation in the County, as defined in general law, as may be amended from time to time.

(2)   "Air navigation" means the operation or navigation of aircraft in the air space over the County or upon any airport or restricted landing area within the County.

(3)   "Air navigation facility" means any facility used in, available for use in, or designed for use in aid of air navigation, including airports, restricted landing areas, and any structures, mechanisms, lights, beacons, marks, communicating systems, or other instrumentalities or devices used or useful as an aid or constituting an advantage or convenience to the safe taking off, navigation, and landing of aircraft or the safe and efficient operation or maintenance of an airport or restricted landing area, and any combination of any or all of such facilities.

(4)   "Airport" means any area of land or water which is designed for the landing and taking off of aircraft, whether or not facilities are provided for

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

the shelter, servicing, or repair of aircraft or for receiving, servicing, and discharging passengers or cargo, all appurtenant areas used or suitable for airport buildings or other airport facilities, and all appurtenant rights-of-way.

(5) "Airports and other aviation facilities and facilities related thereto and any portion thereof" means and includes airports, buildings, structures, terminal buildings, parking garages and lots, space, hangars, lands, warehouses, shops, hotels, other aviation facilities of any kind or nature, or any other facilities of any kind or nature related to or connected with said airports and other aviation facilities which the Authority is authorized by law to construct, acquire, own, lease, or operate, together with all fixtures, equipment, and property, real or personal, tangible or intangible, necessary, appurtenant, or incidental thereto.

(6) "Airport purposes" means and includes airport, restricted landing area, and other air navigation facility purposes.

(7) "Authority" means the Hillsborough County Aviation Authority.

(8) "Authority facility" means an airport, airports and other aviation facilities and facilities related thereto and any portion thereof, air navigation facilities, and special purpose facilities and any portion thereof.

(9) "Board" means the Board of County Commissioners of Hillsborough County.

(10) "Bond" means notes, bonds, certificates, refunding bonds, and other obligations.

(11) "Clerk" means Clerk of the Court of Hillsborough County.

(12) "County" means the County of Hillsborough.

(13) "Division" means the Florida Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco or any successor agency.

(14) "Federal" or "Federal Government" means the United States government, the President of the United States, and any department, corporation, commission, agency, or other instrumentality thereof.

(15) "Governor" means the Governor of the State of Florida.

(16) "Instrument" means a formal or legal document in writing, such as a contract, deed, bond, lease, or mortgage.

(17) "Members" means the governing body of the Authority, and the term "member" means one of the individuals constituting such governing body.

4

CODING: Words stricken are deletions; words underlined are additions.

(18)  "Municipality" means a municipality created pursuant to general or special law authorized or recognized pursuant to s. 2 or s. 6, Art. VIII of the State Constitution and located in the County.

(19)  "Officer of the Authority" means a member who has been elected by the other members to serve as the Chairperson, Vice Chairperson, Secretary, Treasurer, or Assistant Secretary and Treasurer.

(20)  "Person" means any individual, firm, partnership, corporation, company, association, joint stock association, or body politic and includes any trustee, receiver, assignee, or other similar representative thereof.

(21)  "Policy" means a general principle adopted by the members and by which the Authority conducts its internal governance.

(22)  "Regulation" means the same as "rule" as defined by this act and may be used interchangeably with the word "rule."

(23)  "Resolution" means a formal, written expression of an action adopted by the members.

(24)  "Revenues" means rates, fees, grants, receipts, charges, and other moneys acquired through all sources by the Authority and interest income thereon.

(25)  "Rule" means each statement of general applicability adopted by the members that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of the Authority and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule and may be used interchangeably with the word "regulation."

(26)  "Special purpose facilities and any portion thereof" means facilities related to or to be used in connection with the airports and other aviation facilities of the Authority and located on lands at or adjacent to the airports and other aviation facilities under the control, management, and jurisdiction of the Authority and includes all property, structures, rights, easements, and franchises relating thereto and deemed necessary or convenient therefor.

(27)  "Standard procedure" means the method and manner established or approved by the Chief Executive Officer or a designee of the Chief Executive Officer that implements policy for the day-to-day management of the Authority's operations.

(28)  "State government" means the government of the State of Florida, the Governor, and any department, commission, corporation, agency, or other instrumentality thereof.

(29)  "Surplus fund" means an unrestricted fund established by the Authority into which certain revenues of the Authority may be deposited on a monthly or more frequent basis after payment, or provision for payment,

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

of all current expenses pursuant to its then-applicable budget and after all deposits have been made as required under its indentures, trust agreements, and other contracts.

(30)  "TIA" means Tampa International Airport.

Section 4.  Creation; purpose.—

(1)  The Hillsborough County Aviation Authority is created, and the powers granted by this act are declared to be public and governmental functions, exercised for public purposes, and are matters of public necessity. Lands and other real and personal property, easements, and privileges acquired and used by the Authority are declared to have been acquired for and used for public and governmental purposes and as a matter of public necessity. The Authority is a public body corporate and is an independent special district.

(2)  The Authority has exclusive jurisdiction, control, supervision, and management over all airports in the County and each municipality, except any airport owned, controlled, and operated by a private person. Said jurisdiction, control, supervision, and management are in the best interest of the County and each municipality.

Section 5.  Membership.—

(1)  The Authority shall consist of five members: one member who is the Mayor of the City of Tampa, ex officio; one member who is a member of and selected by the Board, ex officio; and three members who are appointed by the Governor. No member shall receive any compensation for services as a member. Each member appointed by the Governor shall be appointed for a term of 4 years. The Board shall appoint one of its members annually at the time of its organizational session who shall serve until its next annual appointment, provided that he or she continues to serve as a county commissioner during that time. Each member shall qualify by taking an oath to faithfully perform the duties of the office, and the oath shall be filed with the Clerk. To be eligible for appointment as a member of the Authority by the Governor, the person appointed must be a resident and citizen of the County and may not be employed by or be an elected official of the County or municipality. Each member may continue to serve until a successor has been commissioned.

(2)  A majority of the members constitutes a quorum.

(3)  The Governor has the power to remove any member for good cause. Within 15 days after any vacancy occurs a successor shall be appointed in the same manner as that member for which a vacancy has occurred and shall serve for the unexpired term of his or her predecessor.

Section 6.  Powers.—

(1)  The Authority has the power to and shall:

CODING: Words stricken are deletions; words underlined are additions.

(a)  Elect officers as follows: one member as Chairperson, one member as Vice Chairperson, one member as Secretary, one member as Treasurer, and one member as Assistant Secretary and Assistant Treasurer, each of whom shall hold office until new elections are held. Elections shall be held for all officer positions whenever a new member is appointed to the board by the Governor.

(b)  Approve, file with the Clerk, and pay any surety bond required of any member and any employee of the Authority.

(c)  Exclusively control, supervise, and manage all airports in the County and each municipality, except any airport owned, controlled, or operated by a private person.

(d)  Advertise for sealed bids and other competitive selection processes when and as required by law; provided, however, the Authority may reject all bids, proposals, or responses and readvertise or select a single item from any bid, proposal, or response as further provided in this act.

(e)  Adopt before October 1 an annual budget which has been prepared by the Chief Executive Officer and which must include an estimate of all revenues and anticipated expenditures for the following fiscal year.

(f)  Require in all bond documents that moneys derived from such bonds be paid to or upon order of the Authority.

(g)  Have the Authority's finances audited in the same manner as other independent special districts are audited.

(2)  The Authority has the power to and may:

(a)  Rely on the provisions of this act, without reference to other laws, in exercising its powers.

(b)  Establish and maintain such airports in, over, and upon any public waters of this state within the limits of jurisdiction of, or bordering on any municipality, any submerged land under such public waters, and any artificial or reclaimed land which, before the artificial making or reclamation thereof, constituted a portion of the submerged land under such public waters.

(c)  Construct and maintain terminal buildings, landing floats, causeways, roadways, bridges for approach to or connecting with the airport, and land floats and breakwaters for the protection of any such airport.

(d)  Require the Treasurer and other officers or employees of the Authority to execute an adequate surety bond, conditioned upon the faithful performance of the duties of the office or employment and in a penal sum fixed by the Authority.

7

CODING: Words stricken are deletions; words underlined are additions.

(e)  Employ, pay, and provide benefits, which may include a bonus scheme, for personnel, including law enforcement officers with full police powers and a Chief Executive Officer, formerly known as the Executive Director, who shall establish positions, duties, and a pay plan, which may include a bonus scheme, for and promote, discipline, and terminate personnel; be responsible for the day-to-day administration, management, and operation of the Authority in accordance with policy established by the members; and perform other duties as may be authorized by the members.

(f)  By policy or resolution, authorize the Chief Executive Officer to perform any of the powers of the Authority in whole or in part and with whatever other limitations it may find appropriate, provided that said authorization does not result in an invalid exercise of delegated legislative authority as defined in general law.

(g)  Employ or contract with technical and professional experts necessary to assist the Authority in carrying out or exercising any powers granted by this act.

(h)  Reimburse for all travel expenses incurred while on business for the Authority, upon requisition, any member, its attorneys, the Chief Executive Officer, and any employee of the Authority traveling under the direction of the Chief Executive Officer or the Chief Executive Officer's designee in accordance with the Authority's policies.

(i)  Create, appoint, and prescribe the duties of any committee.

(j)  Sue and be sued.

(k)  Adopt, use, and alter a corporate seal.

(l)  Publish advertisements.

(m)  Waive advertisement when the Chief Executive Officer determines an emergency exists and purchases must be immediately made by the Authority.

(n)  Negotiate and enter into contracts, agreements, exclusive or limited agreements, and cooperation agreements of any kind necessary for the Authority to fulfill the purposes of this act.

(o)  Include contract specifications maximizing the employment of persons whose protected group has been underutilized in the past.

(p)  Enter into exclusive or limited agreements with a single operator or a limited number of operators. The Authority shall grant exclusive or limited agreements to displace business competition by rule or policy whenever the Authority determines, in consideration of the factors set forth below, that any such agreement is necessary to further the purposes of this act. Before entering into any exclusive or limited agreement, the Authority shall, under authority expressly delegated by the state, determine the necessity for such

8

an exclusive or limited agreement to further the policies and objectives stated in this act, which include public safety, public convenience, quality of service, the need to conserve airport space, the need to avoid duplication of services, the impact on the environment or facilities of the airport as an essential commercial and tourist service center, and the need to avoid destructive competition which may impair the quality of airport services to the public, lead to uncertainty, disruption, or instability in the rendering of such services, or detract from the Tampa Bay area and the state's attractiveness as a center of tourism and commerce. In making its determination, the Authority shall take evidence or make findings of fact and establish such policies it deems necessary. Nothing in this paragraph shall excuse the Authority from complying with applicable state or local requirements for competitive bidding or public hearings which may be required prior to awarding or entering into any contract or other agreement.

(q)  Provide for the manual execution of any instrument on behalf of the Authority by the signature of the Chairperson or Vice Chairperson, and attested to by the Secretary or the Assistant Secretary or, if delegated by the members to do so, the Chief Executive Officer or any other Authority personnel to whom the Chief Executive Officer has delegated authority, or by their facsimile signature in accordance with the Uniform Facsimile Signature of Public Officials Act.

(r)  Purchase and sell equipment, supplies, and services required for its purposes.

(s)  Sell, lease, transfer, dispose of, or grant a lesser interest in any of its properties.

(t)  Dispose of tangible personal property in accordance with chapter 274, Florida Statutes, as may be amended from time to time.

(u)  Dispose of personal property, derelict or abandoned aircraft, and derelict or abandoned motor vehicles found on airport premises in accordance with chapter 705, Florida Statutes, as may be amended from time to time.

(v)  Grant concessions.

(w)  Advertise, promote, and encourage the use and expansion of facilities under its jurisdiction.

(x)  Enact airport zoning regulations in accordance with chapter 333, Florida Statutes, as may be amended from time to time, to ensure the safe operation of airports under its jurisdiction; however, any such airport zoning regulations may not affect the zoning use regulations imposed by the County or any municipality.

(y)  Issue a written permit, before the County or any municipality issues a building permit and upon request of the affected local government in accordance with the provisions of this act, that any construction proposed

9

on land affected by airport zoning regulations conforms to airport zoning regulations.

(z)   Acquire, own, construct, install, maintain, and operate lands and Authority facilities by purchase, gift, devise, lease, or any other means, including by eminent domain in accordance with chapters 73 and 74, Florida Statutes, as may be amended from time to time. For the purposes of making surveys and examinations relative to any condemnation proceedings, the Authority may lawfully enter upon any land, doing no unnecessary damage. The Authority may take possession of property to be acquired by condemnation at any time after the filing of the petition describing the same in condemnation proceedings as provided in general law. The Authority is not precluded from abandoning the condemnation of any such property in any case where possession has not been taken.

(aa)   Reimburse the owner of any structure for which the Authority may require removal, relocation, or reconstruction located in, on, under, or across any private property, public street, highway, or other public or private places for the estimated or actual expense of the removal, relocation, or reconstruction.

(bb)   Supplement and coordinate in design and operation air navigation facilities with those established and operated by the federal and state governments.

(cc)   Request the County or any municipality to convey to the Authority the fee simple title to any airport or other property owned by the County or any municipality and needed for airport purposes.

(dd)   Relinquish jurisdiction, control, supervision, and management over any airport or part of any airport which is under its jurisdiction but which is owned by a municipality, county, or other governmental agency, upon determining that any such airport or part of any such airport is no longer required for airport purposes; provided, however, that the consent and approval of any revenue bondholders is first obtained and necessary authorizations or approvals are received from federal agencies regulating airports.

(ee)   Expend revenues for the cost of investigating, surveying, planning, acquiring, establishing, constructing, enlarging, improving, equipping, and erecting Authority facilities by appropriation of revenues or wholly or partly from the proceeds of bonds of the Authority. The term "cost" includes awards in condemnation proceedings, rentals where an acquisition is by lease, and amounts paid to utility companies for relocation of their wires, poles, and other facilities.

(ff)   Incur expenses as provided in its annual budget and any amended budget.

CODING: Words stricken are deletions; words underlined are additions.

(gg)  Assess against and collect from the owner or operator of each airplane using any Authority facility a landing fee or service charge sufficient to cover the cost of the service furnished to airplanes using any such facility, which cost may include the liquidation of bonds or other indebtedness for construction and improvement.

(hh)  Accept federal, state, and any other public or private moneys, grants, contributions, or loans for the acquisition, construction, enlargement, improvement, maintenance, equipment, or operation of Authority facilities, or any other lawful purpose.

(ii)  Fix, alter, charge, establish, and collect rates, fees, rentals, and other charges, such as, but not limited to, customer facility charges, for the services of Authority facilities at reasonable and uniform rates.

(jj)  Adopt a resolution as may be required to levy an ad valorem tax and submit it to the Board.

(kk)  Apply for, hold, and periodically transfer alcoholic beverage licenses as provided by this act.

(ll)  Adopt and amend rules, regulations, and policies reasonably necessary for the implementation of this act.

(mm)  By resolution, fix and enforce penalties for the violation of this act or a rule, regulation, or policy adopted in accordance with this act.

(nn)  Amend the budget after its adoption.

(oo)  Receive, deposit, secure, and pay out moneys as provided by this act.

(pp)  Designate one or more depositories which are qualified as public depositories pursuant to section 280.04, Florida Statutes, as may be amended from time to time, and thereafter establish and open an account or accounts into which revenues collected are to be deposited and from which expenditures may be made.

(qq)  Establish and deposit into and expend moneys from a surplus fund by using funds other than those derived from ad valorem taxation, that may remain unexpended at the end of the fiscal year and may be set aside in a separate fund to be known as the Capital Improvement Fund and accumulated and expended from year to year solely for the purpose of building and constructing permanent improvements, replacements, alterations, buildings, and other structures, including runways, taxi strips, and aprons.

(rr)  By resolution, borrow money and issue bonds in the manner and within the limitation, except as otherwise provided in this act, prescribed by general law for the issuance and authorization of bonds; however, any bonds issued by the Authority shall be self-liquidating or otherwise payable from

11

revenues of the Authority and shall not be a lien against the general taxing powers of the County or any municipality.

(ss)  Enter into any deeds of trust, indentures, or other agreements with any bank or trust company as security for its bonds, and assign and pledge any or all of its revenues. Such deeds of trust, indentures, or other agreements may contain provisions customary in such instruments or as authorized by the Authority.

(tt)  Secure the payment of bonds or any part thereof by pledging all or any part of its revenues and provide for the security of said bonds and the rights and remedies of the bondholders.

(uu)  Pending the preparation of definitive bonds, issue certificates or temporary bonds to the purchaser of bonds.

(vv)  Transact the business of the Authority and exercise all powers necessarily incidental to the exercise of the general and special powers granted in this act and under any other law.

(ww)  Exercise all powers of a local agency granted pursuant to part II of chapter 159, Florida Statutes, as may be amended from time to time, and to a governmental unit granted pursuant to part VII of chapter 159, Florida Statutes, as may be amended from time to time.

(xx)  Do all acts and things necessary or convenient for the promotion of its business and the general welfare of the Authority.

Section 7.  Alcoholic beverage licenses.—

(1)  Alcoholic beverage licenses, as provided for in section 561.17, Florida Statutes, as may be amended from time to time, shall be issued to the Authority or other governmental agency operating TIA as provided in this section.

(a)  Each such beverage license shall be issued upon the written or printed application for licenses to conduct such business, made to the Division stating the character of the business to be engaged in, the address of the building wherein the establishment sought to be licensed is or will be located, and the kind of license as defined in chapter 561, Florida Statutes, as may be amended from time to time, which the applicant desires. The application shall be in the name of the Authority or other governmental agency operating TIA and when issued shall be issued in the name of such applicant. The applicant shall pay to the Division the license fees for the kind of license that the applicant desires.

(b)  Each license is renewable as provided by general law. Each beverage license shall be for the term and subject to the same privileges or renewal as provided in sections 561.26 and 561.27, Florida Statutes, as may be amended from time to time.

12

CODING: Words stricken are deletions; words underlined are additions.

(c)  Any business operated under any beverage license shall be operated only by a lessee of the restaurants and cocktail lounge or cocktail lounges or bars in the airlines terminal, administration building, or hotel at the airport to whom the license may be transferred. The Authority or governmental agency operating TIA and each authorized lessee shall make application to the Division for the transfer of the license to the lessee, and the application shall be approved by the Division if it meets the requirements of law to do so. Upon termination of a lease for any reason, the lessee shall immediately notify the Division to retransfer the beverage licenses to the Authority or the governmental agency operating TIA. Upon failure of a lessee to notify the Division, the Authority or the governmental agency operating TIA shall immediately notify the Division in writing to transfer the license back to the Authority or other governmental agency operating TIA which may then transfer it to another authorized lessee. Thereafter, the beverage license may be transferred to any new lessee or the restaurants and cocktail lounge, cocktail lounges, or bars upon the same terms and conditions. Any alcoholic beverage license issued in accordance with this section is the property of the Authority or the governmental agency operating TIA, subject to transfer as provided by this act.

(2)  This section does not preclude persons operating on property of the Authority from acquiring an alcoholic beverage license for use on its premises pursuant to general law and the rules of the Division.

Section 8.  County and municipal powers and responsibilities; private ownership transfers.—

(1)  Each municipality is empowered to appropriate moneys for acquiring, establishing, constructing, enlarging, improving, maintaining, equipping, or operating airports and other air navigation facilities under the provisions of this act, and each municipality is authorized to appropriate and to raise by taxation or otherwise moneys to assist in carrying out the provisions of this act as to airports partly or wholly within the limits of each municipality.

(2)  It is lawful for any municipality, and full power and authority is hereby conferred upon each municipality, to cooperate and share in the exercise of the powers and authorities conferred upon the Authority under the provisions of this act, when mutually agreed upon between any such municipality and the Authority.

(3)(a)  The County and each municipality are authorized to aid and cooperate with the Authority in carrying out any authorized purpose of the Authority by:

1.  Entering into cooperation agreements with the Authority and providing in any such cooperation agreement for the making of a loan, gift, grant, or contribution to the Authority.

2.  Granting and conveying to the Authority real or personal property, of any kind or nature, or any interest therein.

13

3. Covenanting in any such cooperation agreement made pursuant to this section to pay all or any part of:

a. The costs of operation and maintenance of Authority facilities from moneys derived from ad valorem taxation or from any other available funds of the County or a municipality.

b. The principal of and interest on any revenue bonds of the Authority.

c. The deposits required to be made into any reserve, the Capital Improvement Fund, or other funds established by the Authority, any indenture, deed of trust, or other instrument securing said revenue bonds from any available funds of the County or a municipality other than moneys derived from ad valorem taxes.

(b) Any cooperation agreement may be made and entered into for such time or times not to exceed 40 years or for such longer time as any revenue bonds of the Authority, including refunding thereof, remain outstanding and unpaid, and may contain such other details, terms, provisions, and conditions as may be agreed upon.

(c) Any cooperation agreement may be made and entered into for the benefit of the holders of any revenue bonds of the Authority as well as the parties thereto and is enforceable in any court of competent jurisdiction by the holders of any such revenue bonds or of the coupons appertaining thereto.

(4) The County and each municipality are authorized and empowered to convey the fee simple title to any real property needed for airport purposes and owned by either the County or a municipality to the Authority.

(5) Before the County or any municipality issues a building permit authorizing building on land affected by airport zoning regulations, it must obtain a written permit from the Authority to certify that the construction conforms to the regulations required by the airport zoning regulations.

(6)(a) Any municipality, the County, or any private owner may, and each is authorized to, sell, lease, lend, grant, or convey to the Authority any interest in real or personal property which may be used by the Authority in the construction, improvement, maintenance, leasing, or operation of Authority facilities. Any municipality, the County, or any other owner is additionally authorized to transfer, assign, and set over to the Authority any contract or contracts which may have been awarded by said municipality, the County, or said owner for the construction of Authority facilities not begun or, if begun, not completed.

(b) Any such action by the County or any municipality must be approved by the governing body of the County or the municipality expressed by resolution or ordinance.

(c) Notwithstanding any other provision of law, this section is complete authority for the acquisition by agreement of airports and other aviation

CODING: Words stricken are deletions; words underlined are additions.

facilities and facilities related thereto and any portion thereof and no other action is required.

Section 9.   Bonds.—

(1)   Bonds may be issued to finance one or more or a combination of Authority facilities. Subject to any prior rights of bondholders, proceeds of such bonds may be pledged and used to pay the cost of the acquisition, construction, or improvement of one or more or a combination of Authority facilities or to refund bonds previously issued for such purpose. Revenues of the Authority, regardless of the airport project or other source from which they are derived, may be pledged to pay bonds issued to finance the cost of Authority facilities and to pay refunding bonds and ancillary costs associated with such financings.

(2)   Except as otherwise provided by this act, security, payment provisions, contracts, terms, and other attributes of bonds issued by the Authority shall be specified by the Authority by initial or amendatory resolution, trust agreement, or other bond documentation.

(3)   The bonds shall be executed by manual or facsimile signature by the officers the Authority has designated, provided that such bonds bear at least one signature which is manually executed to the extent required by general law. Any coupons attached to the bonds shall bear the facsimile signature or signatures of the officer or officers designated by the Authority. If any member or officer whose manual or facsimile signature appears on any bond or coupon ceases to be a member or an officer before the delivery of the bonds, such signature shall be valid and sufficient for all purposes as if that member or officer had remained in office until delivery. The bonds shall bear the seal of the Authority affixed as provided by resolution.

(4)   Bonds may be sold either at public or private sale at such price or prices determined by the Authority.

(5)   Any bonds issued pursuant to this act are negotiable instruments and investment securities under chapter 678, Florida Statutes, as may be amended from time to time.

(6)   The pledge by the Authority of its revenues to the payment of its bonds by the terms of a resolution or through any deed of trust, indenture, or other agreement creates a valid and binding lien thereon and a prior perfected security interest therein from the time the pledge is made. Any revenues so pledged are immediately subject to a lien of such pledge without any physical delivery thereof or further act, and the lien of any such pledge shall be valid and binding against all parties having claims of any kind against the Authority, irrespective of whether such parties have notice thereof. No resolution, deed of trust, indenture, or other agreement by which a pledge is created need be filed or recorded, except in the records of the Authority, and notice is not required to be given to any obligor of such

CODING: Words stricken are deletions; words underlined are additions.

revenues. No filings under the Florida Uniform Commercial Code are required in order to perfect any pledge granted.

(7)  No approval of the qualified electors or qualified freeholders of the state or of the County may be required for the issuance of any bonds by the Authority unless such approval is required by the provisions of the Constitution of the State of Florida.

(8)  Notwithstanding any other provision of law, bonds issued by the Authority are legal investments for banks, savings banks, trustees, executors, all other fiduciaries, and all state, municipal, and other public funds. Any such bonds are securities eligible for deposit for the securing of all state, municipal, and other public funds.

Section 10.   Bondholder rights and remedies.—

(1)  The Authority may not do anything that will impair the security of the bondholders of the Authority or violate any agreement with them for their benefit.

(2)(a)  In addition to any other rights and remedies lawfully granted to bondholders in law, unless otherwise provided by the resolution or resolutions providing for the issuance of bonds, or by any deed of trust, indenture, or other agreement under which the bonds have been issued, holders of 25 percent or such other percentage as may be specified in any deed of trust, indenture, or other agreement under which the bonds were issued in the aggregate principal amount of the bonds then outstanding are entitled to appoint a trustee, upon notice as provided in this act and for the purpose provided in this act, if the Authority defaults in the payment of principal or interest for a period of 30 days after either becomes due, whether at maturity or upon call for redemption, or if the Authority fails to comply with the provisions of this act, its resolution or resolutions, or the requirements of any deed of trust, indenture, or other agreement under which the bonds were issued. Any such bondholders must first give written notice of their intention to appoint a trustee to the Authority by certified United States mail addressed to the chairperson of the Authority at the principal office of the Authority and to the holders of all other bonds then outstanding at their addresses shown on the registration books maintained by the Authority or the bond registrar. For purposes of this paragraph, any trustee appointed to serve in that capacity pursuant to a deed of trust, trust agreement, indenture, or other document by which bonds of the Authority have been issued is deemed to have been selected by the holders of bonds issued under that instrument. If more than one trustee is designated, either by two or more written instruments or pursuant to the provisions of this paragraph, the group of bondholders owning the highest percentage of bonds outstanding has the right to designate the single trustee to serve in that capacity for purposes of this act.

(b)  Unless otherwise provided in any instrument pursuant to which such bonds were issued, any trustee, whether appointed by bondholders in

CODING: Words stricken are deletions; words underlined are additions.

accordance with the provisions of this act or in accordance with the terms of any deed of trust, indenture, or other agreement, may, upon written request of the holders of 25 percent or such other percentage as may be specified in any deed of trust, indenture, or other agreement under which the bonds were issued in the aggregate principal amount of the bonds then outstanding may, in any court of competent jurisdiction, in his, her, or its own name:

1.   By mandamus or other suit, action, or proceeding at law or in equity, enforce all rights of the bondholders, including the right to require the Authority to fix, establish, maintain, collect, and charge rates, fees, rentals, and other charges adequate to carry out any agreement as to, or pledge of, the revenues of the Authority, and to require the Authority to carry out any other agreements with or for the benefit of the bondholders, and to perform its and their duties under this act.

2.   Bring suit upon the bonds.

3.   By action or suit in equity, require the Authority to account as if it were the trustee of an express trust for the bondholders.

4.   By action or suit in equity, enjoin any acts or things which may be unlawful or in violation of the rights of the bondholders.

5.   By written notice given in the same manner as provided by this act to the Authority declare all bonds due and payable and, if all defaults are made good and with the consent of the holders of 25 percent or such other percentage as may be specified in any deed of trust, indenture, or other agreement under which the bonds were issued in the aggregate principal amount of the bonds then outstanding, annul such declaration and its consequences.

(3)   Unless otherwise provided in any bond resolution, deed of trust, indenture, or other agreement pursuant to which bonds were issued, if a default continues for more than 60 days after written notice to the Authority, any trustee when appointed as aforesaid, or acting under a deed of trust, indenture, or other agreement, and whether or not all bonds have been declared due and payable, upon the happening of any of the events of default specified in this section, shall be entitled as of right to appoint a receiver. The receiver may enter and take possession of any of the Authority facilities for which the Authority is in default as provided herein, or any part or parts thereof and the revenues which are or may be applicable to the payment of the bonds in default and operate and maintain the same, for and on behalf of and in the name of the Authority and the bondholders. The receiver shall collect revenues in the same manner as the Authority might, and shall use and apply such funds in accordance with the applicable bond documents or, if not so specified into a separate account, as directed by the court.

(4)   Nothing in this section or any other section of this act authorizes any receiver appointed to sell, assign, mortgage, or otherwise dispose of any assets of the Authority. The powers of such receiver are limited to the

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

operation and maintenance of the Authority facilities as the court may direct, in the name of and for and on behalf of the Authority and the bondholders. No holder of bonds or any court or any trustee is empowered by this act to sell, assign, mortgage, or otherwise dispose of any assets of whatever kind or character belonging to the Authority.

Section 11.  Award of contracts.—

(1)(a)  All Authority purchases of construction, improvements, repairs, equipment, supplies, materials, services, or work of any nature, where the entire cost or value exceeds $30,000, shall be done only under contract or contracts approved and awarded by the Authority with the lowest responsive and qualified responsible bidder, respondent, or proposer, upon proper terms, after advertisement has been given asking for competitive bids, responses, or proposals, provided that the Authority may reject any and all bids, responses, or proposals.

(b)  These requirements do not apply to:

1.  Purchases made pursuant to the Consultants' Competitive Negotiation Act;

2.  Purchases of required equipment, supplies, materials, or services that are highly specialized or proprietary, or when no other authorized vendor can supply the required equipment, supplies, materials, or services;

3.  Purchases of equipment, supplies, materials, or services through a contract issued by a federal, state, or local government if such contract was procured using a full and open competitive process;

4.  Emergency purchases necessary to mitigate a situation which threatens the safety of employees or passengers, the operation of the airport, or loss of airport property;

5.  Certain recurring, mandatory, day-to-day expenditures such as utilities, government fees, and taxes;

6.  Work performed by employees of the Authority;

7.  Labor supplied by the federal, state, or local government;

8.  Contracts or establishment and compliance with rules concerning labor and materials and other related matters in connection with any project, or portion thereof, as the Authority may deem desirable or as may be requested by the federal or state government assisting in the financing of Authority facilities;

9.  Any situation in which the Authority has taken over by transfer or assignment any contract authorized to be assigned to it under the provisions relating to the transfer of existing facilities to the Authority as provided by this act;

18

10. Any contract in connection with the construction of Authority facilities which the Authority has had transferred to it; and

11. Any contract or agreement between the Authority and any engineers, architects, attorneys, agents, or other professional services.

(c) Any contract subject to section 255.05, Florida Statutes, as may be amended from time to time, in excess of $50,000 shall not be entered into for construction, improvement, or repair of Authority facilities unless the contractor has sufficient surety or sureties, approved by the Authority, and in an amount fixed by the Authority, for the faithful performance of the contract. Any such contract shall include provisions that the person entering into the contract with the Authority will pay for all materials furnished and services rendered for the performance of the contract and may maintain an action to recover for the same against the obligor in the undertaking, as though such person was named therein, provided the action is brought within 1 year after the time the cause of action accrued. Nothing in this section shall be construed to limit the power of the Authority to construct, repair, or improve Authority facilities or any addition, betterment, or extension thereto, directly by the officers, agents, and employees of the Authority, or otherwise than by contract.

(2) The Authority may use, as an alternative, the provisions of section 255.20, Florida Statutes, as may be amended from time to time, to satisfy the competitive procurement requirements of this section.

Section 12.   Legal effects.—Any acquisition of property or rights therein for Authority facilities, or for airport protection privileges, including the conveyance and acceptance thereof, and any bonds issued and sold up to and including the effective date of this act are validated.

Section 13.   Ad valorem tax.—When the Authority prepares its annual budget and finds it necessary to levy an ad valorem tax, it shall adopt a resolution determining the estimated amounts to be expended by the Authority in the ensuing fiscal year, exclusive of the proceeds of any bonds or other obligations of the Authority, for acquiring, establishing, constructing, enlarging, operating, and maintaining Authority facilities or for any other corporate purpose of the Authority, and request the Board to levy the tax, not to exceed 1.5 mills per annum, on all the taxable real and personal property in the County for the exclusive use of the Authority and for the purposes provided in this section. The Authority shall submit a certified copy of any such resolution to the Board at the same time it submits its annual budget to the Clerk. The Board has no right or authority to alter either the amount of the levy request or the use of its proceeds or to in any way alter the budget of the Authority. The Board shall authorize the levy requested. The tax collector of the County shall collect and promptly pay over to the Authority the proceeds of such tax.

Section 14.   Prohibition on the use of the taxing power of the state.—The Authority has no power to pledge the taxing power of the state, or any

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

political subdivision or agency thereof, nor shall any of the obligations issued by the Authority be deemed to be obligations of the state, or any political subdivision or agency thereof, secured by and payable from the ad valorem taxes thereof. The state, or any political subdivision or agency thereof, is not liable for the payment of principal of or interest on such obligations, except from the special funds provided for in this act.

Section 15.  Covenant of the state.—The state pledges and agrees with the Federal Government and any person acquiring any bonds issued by the Authority for the construction, extension, improvement, or enlargement of Authority facilities that the state will not limit or alter the rights vested in the Authority until all bonds at any time issued, together with the interest thereon, are fully paid and discharged. The state further pledges and agrees with the Federal Government that if the Federal Government contributes any funds for the construction, extension, improvement, or enlargement of Authority facilities the state will not alter or limit the rights and powers of the Authority in any manner which would be inconsistent with the continued maintenance, operation, or the improvement of Authority facilities or which would be inconsistent with the due performance of any agreements between the Authority and the Federal Government. The Authority shall continue to have and may exercise all powers granted in this act, so long as the same are necessary or desirable for the carrying out of the purposes of this act and the purposes of the Federal Government in the construction, improvement, maintenance, or enlargement of Authority facilities.

Section 16.  Exemption from taxation.—Any property owned or otherwise acquired by the Authority is exempt from taxation to the same extent as other property used for public purposes. The effectuation of the authorized purposes of the Authority shall and will be, in all respects, for the benefit of the people of the state and the County for the increase of their commerce and prosperity, and for the improvement of their welfare, health, and living conditions and, since the Authority will be performing essential governmental functions in effectuating such purposes, the Authority is not required to pay any taxes or assessments of any kind or nature whatsoever upon any property required or used by it for such purposes, or any rates, fees, rentals, receipts, or incomes at any time received by it, and the bonds issued by the Authority, their transfer and the income therefrom, including any profits made in the sale thereof, and any security instruments or agreements securing the repayment thereof, are free from taxation of any kind by the state or any political subdivision or taxing agency or instrumentality thereof.

Section 17.  Discrimination prohibited.—

(1)(a)  The Authority and its lessees, including successors in interest, shall not because of race, color, sex, religion, national origin, age, handicap, or marital status of any individual refuse to hire, employ, bar, or discharge from employment such individual or otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment.

CODING: Words stricken are deletions; words underlined are additions.

(b)   No person on the grounds of race, color, sex, religion, national origin, age, handicap, or marital status shall be excluded from the participation in, denied the benefits of, or otherwise subjected to discrimination in the use of leased premises of the Authority.

(c)   In furnishing services or materials, or in the construction of any improvements, no person shall be excluded from participation in, denied the benefits of, or otherwise subjected to discrimination with respect thereto.

(2)   There is no right to apply to the court for relief on account of any order, requirement, decision, determination, or action of the Authority pursuant to this section unless there has been an appeal to the Authority.

Section 18.   Recodification.—Prior to July 1, 2022, and every 10 years thereafter, The Hillsborough County Legislative Delegation shall review this chapter, and all acts which amend or otherwise modify this chapter, for the purpose of determining whether there is a need for recodification of same. If it is determined that there is such a need, the legislative delegation may require the Authority to accomplish same, and to prepare or cause to be prepared such legislation as may be necessary for such purpose by preparing such legislation.

Section 19.   Grammatical usage.—The singular includes the plural and vice versa, and gender-specific language includes the other gender and neuter.

Section 20.   Severability.—The provisions of this act are severable, and if any of the provisions hereof shall be held to be unconstitutional or invalid, such determination shall not affect the constitutionality or validity of any of the remaining provisions of this act.

Section 4.   Chapters 2003-370 and 2007-292, Laws of Florida, are repealed. Such repeal does not affect the prosecution of any cause of action that accrued before the effective date of the repeal and does not affect rules, regulations, policies, actions, and decisions, contracts, agreements, obligations, and properties of the Authority existing prior to the effective date of this act. Nothing in this act is intended, nor shall any provision hereof be construed so as to repeal, abrogate, impair, or adversely affect the rights and remedies of the holders of any obligations of the Authority issued pursuant to the existing acts or any other applicable provision of law.

Section 5.   This act shall take effect upon becoming a law.

Approved by the Governor April 13, 2012.

Filed in Office Secretary of State April 13, 2012.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.