UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HILLSBOROUGH COUNTY
AVIATION AUTHORITY, a Body politic
under the laws of the State of Florida,

     **Plaintiff,**

     v.                                **CASE NO. 8:12-CV-2478-27 TGW**

HERNANDO COUNTY Board of
County Commissioners, a body politic under
the laws of the State of Florida, and
HERNANDO COUNTY AVIATION
AUTHORITY, a body politic under the laws
of the State of Florida,

     **Defendants.**

_____/

## DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUCTION

Defendants HERNANDO COUNTY and HERNANDO COUNTY AVIATION AUTHORITY ("HERNANDO COUNTY")[1] hereby oppose Plaintiff HILLSBOROUGH COUNTY AVIATION AUTHORITY'S ("HCAA's") motion for preliminary junction (Doc. 19) (the "Motion"). The Motion must fail for four reasons. First, HCAA is not authorized to own trademarks and thus cannot bring an action for trademark infringement. Second, even if it could bring this action, the marks are either unprotectable or so weak as to defeat Plaintiff's Motion. Third, the Motion is devoid of evidentiary support on which the Court could base any likelihood of success on the merits. Fourth, the remaining factors weigh against a preliminary injunction.

---

[1]    The Complaint names the "Hernando County Aviation Authority" as a defendant. Yet, the Authority serves merely as an advisory committee for the Hernando County Board of County Commissioners. *Cf.* Hernando County Code §3-18 (requiring all Authority votes on non-aviation related matters to be approved by the County Commission) *with* Hernando County Code §3-25 ("Any action of the authority shall be subject to the approval or disapproval by the board of county commissioners."). Accordingly, the Hernando County Board of County Commissioners, not the Hernando County Aviation Authority, took the actions that are the subject of the Complaint.

## I.   FACTUAL BACKGROUND

Unlike numerous Florida Statutes relating to other state agencies, *see infra*, the enacting statute for HCAA does not empower HCAA to own, register or enforce any trademarks. *See* Fla. Stat. 2013-234, §6.   Nevertheless, HCAA claims rights in the TAMPA INTERNATIONAL AIRPORT name from October 15, 1947.  (Motion at 4).

At the time HCAA filed this action on November 1, 2012, Plaintiff had no federally registered trademarks.  On December 4, 2012, Plaintiff acquired a federal trademark for TAMPA INTERNATIONAL AIRPORT.  (*See* Doc. 19-2).[2]  The United States Patent and Trademark Office ("PTO") initially issued an office action rejecting Plaintiff's attempt to register TAMPA INTERNATIONAL AIRPORT as a trademark because the term "Tampa International Airport" was primarily geographically descriptive and because the words "International Airport" in the mark were generic.  (*See* Doc. 19-4 at p. 2 ¶2).

Only when Plaintiff submitted an unsupported and untested declaration to the effect that its "Tampa International Airport" mark had acquired "secondary meaning" was the mark permitted to register.  (*See* Doc. 19-4 at p. 3 ¶5).  Even then, HCAA was forced to disclaim the "International Airport" portion of its mark and thus has no rights to that term separate and apart from the full mark TAMPA INTERNATIONAL AIRPORT.  (Doc 19-2; Doc. 19-4 at p. 2 ¶3).

From 1985 until 2004, a third-party unaffiliated with HCAA operated an airport located off of State Road 54 in Odessa, Florida, under the name "Tampa Bay Executive Airport."[3] Despite almost two decades of co-existence, there is no evidence of any confusion between the Tampa International Airport and this Tampa Bay Executive Airport.  Don Silvernell, the Airport Manager from 1985-95, and Lew Friedland, the past President of the Tampa Bay Executive

---

[2]      Plaintiff registered its TAMPA AIRPORT mark on December 18, 2012. (*See* Doc. 19-1).
[3]      Until 1985, the airport had been known as the West Pasco Airport. (Silvernell Decl. ¶3).

Airport, are unaware of anyone ever being confused as to source or affiliation between the Tampa International Airport and this Tampa Bay Executive Airport. (Silvernell Dec. ¶¶3,5-6; Friedland Dec. ¶8). HCAA never voiced any objection regarding this use of the "Tampa Bay Executive Airport" name. (Silvernell Dec. ¶4; Friedland Dec. ¶6).

Currently in operation and located approximately 29 miles north/northeast of the Tampa International Airport is another airport operating under the name "Tampa North." (Silvernell Dec. ¶7). There has been no suggestion of any confusion from the operation of this "Tampa North" airport. *Id.*

Beginning in 2009, HCAA adopted the name "Tampa Executive Airport" for an airport in unincorporated Hillsborough County at 6582 Eureka Springs Road. This airport previously operated under the name "Vandenberg Airport." (*See* Compl. ¶14.) Plaintiff does not hold a federally-registered trademark for the mark TAMPA EXECUTIVE AIRPORT. Because Plaintiff has operated this airport for less than five years, Plaintiff cannot rely on an unsubstantiated declaration to the PTO claiming that the mark has acquired secondary meaning to procure a federal trademark registration. *See* 15 U.S.C. §1052(f).

HERNANDO COUNTY operates an airport located in Brooksville, Florida. The airport was founded during World War II as the Brooksville Army Airfield. The airport is not served by any commercial airlines or regularly scheduled passenger service and has no regular cargo air service. (McHugh Dec. ¶¶11 & 12). Until recently, the airport was known as the Hernando County Airport. Due to out-of-area businesses' and customers' unfamiliarity with county names, HERNANDO COUNTY's Business Development Manager recognized that this name was an impediment to marketing the airport. *Id.* ¶3. In late 2010, HERNANDO COUNTY began evaluating alternative names for the airport through task forces and focus groups comprised of

3

area business people and political leaders. *Id.* ¶4. As a result of this lengthy and thorough process, it became evident that regional rebranding of the airport was necessary for out-of-area businesses and customers to understand the general region in which the airport operates. *Id.* ¶5.[4]

This regional rebranding approach was consistent with the approach used by other airports such as the five (5) airports in the Chicago region of Illinois and Indiana that use the name "Chicago;" the five (5) airports in the Dallas region that use the name "Dallas" and the four (4) airports in the Orlando region that use the name "Orlando." *Id.* At no time during this lengthy rebranding process did any participant ever suggest that the use of the phrase "Tampa Regional" could cause identifiable confusion with Tampa International Airport or allow HERNANDO COUNTY to benefit from any goodwill associated with HCAA's airports. *Id.* ¶4.

The resulting choices from this rebranding process were "Brooksville Tampa Regional Airport (first choice) and "Brooksville Tampa Bay Airport (second choice). *Id.* ¶6. On October 23, 2012, HERNANDO COUNTY's Board of County Commissioners voted to change the name of the airport to "Brooksville Tampa Regional Airport." (*Id.* ¶6).

Since this name change, there has been no confusion between HERNANDO COUNTY's airport and HCAA's airports. (*See generally* McHugh Dec. ¶¶11-15; Silvernell Dec. ¶2). HCAA has proffered no evidence of confusion. This is unsurprising because: (1) Brooksville Tampa Regional Airport does not offer regularly scheduled passenger service or cargo service; (2) private pilots are unlikely to be confused because they rely on airport codes ("BKV" for Brooksville Tampa Regional Airport and "TPA" for Tampa International Airport) *Id.* ¶13; and (3) businesses and vendors in the maintenance, repair and overhaul industry for aviation ("MRO") are sophisticated and unlikely to confuse the airports. (McHugh Dec. ¶¶11-14).

---

[4]    Interestingly, this was the very motivation that caused the name change from West Pasco Airport to Tampa Bay Executive Airport. (Friedland Dec. ¶5).

## II.    LEGAL ARGUMENT

### A.    Standard for a Preliminary Injunction

As Plaintiff states, a preliminary injunction may only issue if there is:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

*North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008).

As this Court stated recently, "[a] preliminary injunction is an 'extraordinary and drastic remedy' and is 'not to be granted unless the movant clearly established the burden of persuasion as to the four prerequisites.'" *You Fit, Inc. v. Pleasanton Fitness, LLC*, Case No. 8:12–CV–1917, 2013 WL 521784, at *1 (M.D. Fla. Feb. 11, 2013), *quoting U.S. v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir.1983).

### B.    The Hillsborough County Aviation Authority Has Not and Cannot Establish a Likelihood of Success on the Merits of its Trademark Infringement Claim

To prevail on its trademark infringement claim, HCAA must establish:

> (1) that [it] possess[es] a valid mark; (2) that the defendant[] used the mark, (3) that the defendant[]'s use of the mark occurred "in commerce," (4) that the defendant[] used the mark "in connection with the sale ... or advertising of any goods," and (5) that the defendant[] used the mark in a manner likely to confuse consumers.

*Axiom* Worldwide, 522 F.3d at 1218. Here, HCCA's Motion must fail both because HCAA does not and cannot possess a valid trademark and because HERNANDO COUNTY has not used its mark in a manner likely to confuse the relevant consumers.

#### 1.    Plaintiff HCAA Cannot Own a Trademark

As a threshold matter, a plaintiff must own a trademark (or at least have exclusive rights as a licensee) before it can bring and prevail upon a claim of infringement. *See, e.g., Ferrellgas*

*Partners, L.P. v. Barrow,* 143 Fed. App. 180, 186-189 (11th Cir. 2012); *Tally-Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1022-23 (11th Cir. 1989). Here, HCAA cannot establish a likelihood of success on the merits due to its inability to own any trademarks.

As set forth more thoroughly in Defendants' Motion to Dismiss for Lack of Standing (Doc. 23), HCAA is a body politic formed as an independent special district.[5] *See* Fla.Stat. Chapt. 2012-234. Independent special districts only possess the powers expressly granted to them by the Florida Legislature. *See Board of Commissioner's of Jupiter Inlet District v. Thibadeau,* 956 So.2d 529, 533 (Fla. 4th DCA 2007). Thus, special districts possess no inherent powers to act beyond those powers which their enabling legislation expressly or by necessary implication bestow on them. *See State ex rel. Davis v. Jumper Creek Drainage District,* 14 So. 2d 900, 901 (Fla. 1943)(because the districts are creatures of statute, each board of supervisors must look entirely to the statute for its authority); *Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District,* 82 So. 346, 351 (Fla. 1919); *Roach v. Loxahatchee Groves Water Control District,* 417 So. 2d 814 (Fla. 4th DCA 1982).

When the Florida Legislature created HCAA, it did not include in HCAA's powers the power to acquire, hold, enjoy, register or enforce trademarks. *See* Fla.Stat. Chapt. 2012-234, §6. As the Florida Legislature is well-practiced in granting this power, having extended this power to numerous other governmental bodies,[6] it is clear that HCAA is not so empowered. HCAA's

---

[5]    Fla. Stat. §189.403(3) defines a "special independent district" as "a special district that is not a dependent special district as defined in subsection (2). A district that includes more than one county is an independent special district unless the district lies wholly within the boundaries of a single municipality."

[6]    The Florida Legislature has explicitly granted authority for a state entity to acquire, enjoy and use trademarks on at least 14 occasions. *See* Fla.Stat. §20.43(8)(Department of Health); Fla.Stat. §24.105(10) (Department of the Lottery); Fla.Stat. §215.4701(1)(State Board of Administration on behalf of the Florida Retirement System); Fla.Stat. §§267.7031(2)(a)1, 267.074(2)(d)(Division of Historical Resources of the Department of State); Fla.Stat. §282.702(5)(Department of Management Services); Fla.Stat. §288.9015(2)(j)(Enterprise Florida, Inc.); Fla.Stat. §331.305(4)(Space Florida); Fla.Stat. §334.049(2)(Department of Transportation); Fla.Stat. §373.608(1)(Water Management Districts); Fla.Stat. §601.101(Department of Agriculture); Fla.Stat. §1001.451(5) (Regional Consortium Service Organizations); Fla. Stat. §1001.64(5)(Florida Colleges' Boards of Trustees); Fla.

attempt to assert trademark rights, to register such trademarks and to enforce its supposed trademark rights in this action is beyond its statutory authority and *ultra vires.* HCAA lacks standing to bring this trademark infringement action and thus cannot have any likelihood of success on the merits.

### 2.    HCAA Has Not and Cannot Establish Any Likelihood of Confusion

To prevail on its trademark infringement claim, HCAA must establish a likelihood of confusion. As this Court noted recently, in determining whether marks are likely to be confused, the Courts in the Eleventh Circuit consider seven factors:

> (1) the type of mark, (2) the similarity of the marks at issue, (3) the similarity of the services the marks represent, (4) the similarity of the parties' service outlets and customers, (5) the nature and similarity of the parties' advertising media, (6) the defendant's intent, and (7) any actual confusion.

*You Fit,* 2013 WL 521784, at *2 (quotation omitted).

### a.    The type of mark

### 1)    HCAA has no "family of marks"

As a threshold matter, HCAA cannot be said to own any "family of marks". A "family of marks" is "a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002). When a family of marks exists, a defendant's mark can infringe the common characteristic or "surname" of the family of marks, even if the defendant's mark would not necessarily infringe any of the individual marks owned by the plaintiff. *See, e.g., McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1272

---

Stat. §1002.37(2)(c)(Florida VirtualSchool); Fla. Stat. §1004.447(2)(e)(Florida Institute for Humane and Machine Cognition, Inc.).

(S.D.N.Y. 1986)(family of marks owned by McDonald's with "Mc" and "Mac" surnames). The mere ownership of similar marks by a single entity cannot establish a "family of marks." *See id.*; *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991). Instead, "[t]here must be a recognition among the purchasing public that the common characteristic [or surname] is indicative of a common origin of the goods." *AM General*, 311 F.3d at 814.

Without any relevant support, HCAA claims that it owns a "Family of Service Marks" that have "become a strong source-identifier of the [HCAA's] services." (Motion at 5). Included in this alleged family of marks are HCAA's TAMPA INTERNATIONAL AIRPORT®, TAMPA AIRPORT® and TAMPA EXECUTIVE AIRPORT marks. (Motion at 5; Illustrato Affidavit (Doc. 20-1) at ¶¶4-6). The evidence put forward by HCAA, however, is sorely lacking. HCAA Vice-President Illustrato states merely that he "understands" that the individual marks have been "in use" since 1947, 1997 and 2009 respectively and that HCAA has "a yearly marketing budget of approximately $3,800,000." (Doc. 20-1 at ¶¶5-6). He adds only that the "trademarks appear on [HCAA's] advertising literature and/or its website and are central to its branding efforts." (Doc. 20-1 at ¶6).

The necessary proof for establishing a family of marks is much more demanding. Particularly relevant is "the extent to which the proponent of the family has used joint advertising and promotion of the family in a manner designed to create an association of common origin for all marks containing the family formative ...." 3 J. THOMAS MCCARTHY, *McCarthy on Trademarks* §23:61 (2012). Even where such evidence exists, a "surname" that is merely descriptive is unprotectable. *See, e.g., Servo Corp. of America v. Servo-Tek Products Co.*, 289 F.2d 955, 956 (C.C.P.A 1961)(mark owner could not obtain exclusive proprietary rights

to the term "servo," which was "a widely used term in industry and is commonly accepted as meaning servomotor or servomechanism").

HCAA puts forth no evidence whatsoever that marks within its family of marks have been advertised or promoted in a manner designed to create an association of common origin. Even HCAA's own affiant fails to claim that the marks are ever marketed in a manner suggesting an association. Moreover, the terms "Tampa" (merely descriptive) and "Airport" (generic) could not possibly constitute a surname for any entity's exclusive use. HCAA has not established that it owns any "family of marks."

### 2) The subject marks are unprotectable, or at best, weak

Even if HCAA could own the trademarks it claims to own, those marks are unprotectable, or at best, weak. Not surprisingly, trademark law looks askance on parties seeking to appropriate geographically descriptive terms. "Descriptive geographical terms are in the 'public domain' in the sense that every seller should have the right to inform customers of the geographical origin of his goods." 2 J. THOMAS MCCARTHY, *McCarthy on Trademarks* §14:1 (2012); *accord Restatement Third, Unfair Competition* §14, comment d (1995)("merchants should remain free to indicate their place of business or the origin of their goods without unnecessary risk of infringement"). "These geographical terms should remain free for all sellers in that portion of the world to use descriptively with equal honesty." 2 J. THOMAS MCCARTHY, *McCarthy on Trademarks* §14:1 (2012).

As a consequence, "... terms that are descriptive of the geographic location or origin of goods and services are regarded by the law as not being 'inherently distinctive' marks." *Id.* Thus, trademark law only permits geographically descriptive marks to rise to the level of protectable marks if, through usage, the mark has become distinctive through the acquisition of "secondary meaning" in the minds of the consuming public. *Id.*

> "Secondary meaning" in connection with geographically descriptive marks means that the mark no longer causes the public to associate the [services] with the geographical location, but to associate the [services] with a particular [service] or source of the [service].

*OBX-Stock, Inc. v. Bicast, Inc.,* 558 F.3d 334, 340 (4th Cir. 2009). "In other words, geographically descriptive marks, without more, are not specific or distinctive enough to pinpoint a certain seller and to identify and distinguish his goods from those of others." 2 J. THOMAS MCCARTHY, *McCarthy on Trademarks* §14:1 (2012).

In its Amended Complaint, Plaintiff alleges that its marks – and most particularly its use of the geographically descriptive term "Tampa" – has acquired "secondary meaning" in the minds of consumers. (Doc. 15 at ¶¶12, 19). HCAA's Motion is wholly unsupported by any evidence of this secondary meaning. Interestingly, and perhaps telling, HCAA has not proffered any consumer survey evidence establishing that the term "Tampa" has come to be recognized as uniquely identifying airport services emanating from HCAA. *See Deltona Transformer Corp. v. Wal-Mart Stores, Inc.,* 115 F. Supp.2d 1361, 1367-68 (M.D. Fla. 2000)(denying preliminary injunction because absence of consumer survey of secondary meaning resulted in the failure of the "high degree of proof" necessary to establish secondary meaning).

In the absence of consumer survey evidence "four factors can be considered in determining whether a particular mark has acquired a secondary meaning: "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service]." *Investacorp Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.,* 931 F.2d 1519, 1525 (11th Cir. 1991); *accord Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.,*

508 F.3d 641, 648 n. 8 (11th Cir. 2007). No such evidence is submitted by HCAA. Even HCAA's employee-affiant, Mr. Illustrato (Doc. 20-1), states merely that it is his "understanding" that the TAMPA INTERNATIONAL AIRPORT mark has been in use since 1947 (some 42 years prior to his employment by HCAA). HCAA offers no documentation of its actual use of the mark during this timeframe.

It thus appears that HCAA is seeking to travel on the *prima facie* presumption of trademark validity which accompanies a federal trademark registration under 15 U.S.C. §1115(a).[7] Fatal for HCAA's reliance on this presumption, however, is the timing of HCAA's federal registrations. The federal registration for TAMPA INTERNATIONAL AIRPORT® did not issue until December 4, 2012 and the federal registration for TAMPAAIRPORT® did not issue until December 18, 2012. Both registrations issued after this lawsuit was filed and after HERNANDO COUNTY changed its airport name to the contested Brooksville Tampa Regional Airport.

As recognized in *Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, LP*, 2002 WL 1763999 (D. Minn. 2002), the timing of the effectiveness of the presumption of secondary meaning becomes "crucial." *Id.* at *5; *accord Aromatique, Inc. v. Gold Seal*, 28 F.3d 863, 870 (8th Cir. 1994). As in *Minnesota Specialty Crops, Inc.*, HCAA's presumption of secondary meaning through federal registration post-dates the date of the initiation of the allegedly infringing conduct. Thus, no presumption of secondary meaning attaches and HCAA's Motion for Preliminary Injunction must fail for lack of proof of secondary meaning.

---

[7]       Significantly, HCAA never proffered any proof of secondary meaning when the U.S. Patent & Trademark Office initially rejected its trademark registration applications on grounds of lack of distinctiveness. Instead, HCAA merely signed a declaration that it had been using the marks for more than five years in a substantially exclusive and continuous manner. Even when the application was opposed by a third party on grounds of lack of distinctiveness, HCAA proffered no proof of secondary meaning. Instead, HCAA's motions for summary judgment were granted as "conceded" because the opposer failed to respond to discovery requests during the proceeding.

Even if HCAA had a presumption of secondary meaning accorded under 15 U.S.C. §1115(a), the presumption is rebuttable. HERNANDO COUNTY has rebutted this presumption of secondary meaning by establishing the contemporaneous existence of other non-HCAA operated airports in the region that use the "Tampa" name including the Tampa Bay Executive Airport and Tampa North. This evidence strongly indicates that HCAA has not proven "substantial exclusive use" as required under 15 U.S.C. §1052(f) to constitute *prima facie* evidence of secondary meaning. Again, since HERNANDO COUNTY has rebutted any presumption of secondary meaning and HCAA has proffered no probative evidence of secondary meaning, HCAA has failed to meet its burden of establishing a likelihood of success on the merits as to the existence of a protectable mark.

It follows that HCAA's citation to the 1955 decision of the Ninth Circuit in *North American Aircoach Systems, Inc. North American Aviation, Inc.*, 231 F.2d 205 (9th Cir. 1955) is misplaced. (Motion at 13). As HCAA has set forth no "proof of secondary meaning," the geographic term "Tampa" at issue in this case is not entitled to any protection at all.[8] As the Ninth Circuit stated in *North American Aircoach*: "It is extremely difficult to give to a geographic term a proprietary connotation since under ordinary circumstances it cannot be used to exclude others who operate in the same area ...." *Id.* at 210.

For all these reasons, even if the Legislature had authorized HCAA to own trademarks (which it did not), even if HCAA had secured a federal registration before HERNANDO COUNTY changed its airport name (which it did not), and even if HCAA had proffered some probative evidence of secondary meaning once HERNANDO COUNTY rebutted the statutory

---

[8]     Contrast this lack of evidence with the *North American Aircoach* case itself, in which "the name of plaintiff had a world wide significance owing to its activities in a war industry. This is so well known that the Court would take judicial notice of it if it had not been proved. But there was exact and explicit proof." *Id.* at 209.

presumption (which it has not), HCAA's claim of ownership of the "Tampa" name as a trademark could result in only the "weakest" of trademarks.

b.      **The marks are not meaningfully similar**

Despite the dominant presence of the term "Brooksville" as the very first word of Defendant's BROOKSVILLE TAMPA REGIONAL AIRPORT mark, HCAA somehow argues that Defendant's mark is "nearly identical" to HCAA's TAMPA INTERNATIONAL AIRPORT, TAMPA AIRPORT and TAMPA EXECUTIVE AIRPORT marks. (Motion at 15). Other than mentioning in passing that HERNANDO COUNTY's mark is indeed BROOKSVILLE TAMPA REGIONAL AIRPORT, HCAA fails even to address the fact that Defendant's mark contains the dominant word "Brooksville" and the modifying word "Regional" as well as the absence of the word "International". In HCAA's estimation, it seems, any airport mark that contains the geographically descriptive term "Tampa" and the generic term "Airport" should be considered "nearly identical" to HCAA's marks.

This assertion is false. It is axiomatic that marks must be compared by looking at them as a whole instead of breaking them up into component parts. *See, e.g., China Healthways Inst., Inc. v. Wang*, 491 F.3d 1337, 1340 (Fed. Cir. 2007)("It is incorrect to compare marks by eliminating portions thereof and then simply comparing the residue"). In determining the question of likelihood of confusion, greater weight should be given to important or dominant parts of a composite mark because those parts will have greater significance to the ultimate consumer. *See Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997)("if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements"); 3 J. THOMAS MCCARTHY, *McCarthy on Trademarks* §23:42 (2012).

Here, the dominant portion of Defendant's mark is "Brooksville" or at least "Brooksville Tampa Regional". This portion of the mark makes clear that the airport is in or near Brooksville. In contrast, none of HCAA's marks contain the word "Brooksville" and none of HCAA's marks contain the anything akin to the word "regional".  Moreover, TAMPA INTERNATIONAL AIRPORT contains the word "International" and TAMPAAIRPORT creates a different commercial impression by omitting a space between the words "Tampa" and "Airport".  While HCAA's marks may be somewhat similar to that of HERNANDO COUNTY because they include the geographically descriptive word "Tampa," this similarity is more than negated by the presence of the dominant term "Brooksville" in Defendant's mark.  As HCAA has failed to provide any survey evidence that would gauge the importance of the word "Brooksville" in HERNANDO COUNTY's mark, any contention by HCAA that the marks create a commercial impression that is "nearly identical" is unsupported and self-serving.

      **c.**     **The services offered under the marks and the potential purchasers of those services are meaningfully different**

Unlike the Tampa International Airport, the Brooksville Tampa Regional Airport has never offered regularly scheduled passenger service or cargo service. (McHugh Dec. ¶¶11-12).[9] In fact, the Brooksville Tampa Regional Airport lacks the necessary infrastructure and support such as jetways, baggage handling facilities, customs facilities, and parking necessary to offer these services. *Id.* Instead, the Brooksville Tampa Regional Airport "serve[s] private civilian aviation". *Id.* at 13. Unlike the Tampa International Airport, the maintenance, repair and

---

[9]     Although HCAA's sole affiant states that "[t]he Aviation Authority offers a number of different services under its trademarks ... includ[ing] regularly scheduled passenger service, general aviation services, and commercial aviation development," (Doc. 20-1 at ¶8), HCAA fails to provide any evidence as to which specific services are offered under which marks and at which airports.  While HCAA claims that it "offers the same services that Defendants offer" under its TAMPA EXECUTIVE AIRPORT mark (Motion at 18), HCAA fails to provide any evidentiary support for this claim and fails even to identify what these alleged services are.  Defendant, and the Court, are left to guess which services are offered under which marks.  As such, HCAA cannot carry its burden of establishing the mark(s) under which the services offered or potential purchasers at issue are allegedly similar.

overhaul of aircraft ("MRO") operators and facilities at the Hernando airport generally focus on "small MRO operations." *Id.* at 14. Thus, the services offered under Defendant's mark are almost wholly different.

The only possible similarity relates to MCO operations for aircraft. It is uncontested, however, that those involved in MCO operations are particularly sophisticated and "by necessity quite aware of the locations of various facilities and airports." (McHugh Decl. ¶14). Such sophisticated customers are much less likely to be confused because they are more discriminating and knowledgeable. *Cf., e.g., Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.* 954 F.2d 713, 718 (Fed. Cir. 1992)(no likelihood of confusion where goods and services were "usually purchased after careful consideration by persons who are highly knowledgeable").

HCAA sidesteps these factors and instead asserts that "travelers who use the Hernando Facility *may also at some point* use one of the Aviation Authority's facilities." (Motion at 17-18 (emphasis added)). Of course, this is not the relevant test. If it were, any goods or services offered by any two parties could be considered similar. Those who drive cars may also at some point take a bus. Those who frequent movie theaters may also at some point attend monster jam truck rallies. HCAA also ignores the fact that such travelers would not be general commercial aviation passengers taking advantage of regularly scheduled flights, but sophisticated passengers utilizing private civilian planes. Once again, such travelers would by necessity be unlikely to confuse the airports.

HCAA thus asserts only that "consumer confusion *may* occur" and that "the public *may* believe that Defendants' services are affiliated with, sponsored and/or approved by the Aviation Authority." (Motion at 18 (emphasis added)). Yet, HCAA's unsupported, subjective assertions

that confusion "may occur" are a far cry from the necessary evidentiary proof that confusion is likely. These factors favor HERNANDO COUNTY heavily.

**d.      There is no evidence of similar use of advertising media**

HCAA puts forth no evidence to support its assertion that HCAA and HERNANDO COUNTY advertise the services offered under their respective mark "using the same mediums [sic]." (Motion at. 18). The Illustrato affidavit, the only piece of admissible evidence submitted by HCAA, fails to make any mention of advertising media. (*See* Doc. 20-1).

**e.      HCAA fails to establish improper intent by HERNANDO COUNTY to infringe on any protectable mark**

HCAA's entire argument regarding intent relies on the mistaken notion that HCAA is the sole entity entitled to inform others that its airports are within the Tampa region. (*See* Motion at 18-20). Tellingly, HCAA makes no attempt to distinguish between the Tampa geographic region and the Tampa International Airport or Tampa Executive Airport. *Id.* HCAA's sole "evidence" of alleged bad intent by HERNANDO COUNTY is a quote not in evidence in which a participant at a Hernando County BOCC meeting emphasizes the desire to associate the airport with the Tampa region in which it operates. (Motion at 19). Noticeably absent from HCAA's brief is even a single citation to a case in which intent has been presumed from a defendant's mere adoption of a geographically descriptive mark.

Subjective argument is no substitute for evidence of actual intent. As HERNANDO COUNTY Manager of Business Development McHugh states in his uncontroverted declaration, his office took part in a lengthy process of renaming the airport to better market the airport to prospective customers in the general region in which the airport operates. (McHugh Decl. ¶¶4-5). At no time did anyone "ever suggest that the adoption of the phrase 'Tampa Regional' into the airport name would cause an identifiable connection to the Tampa International Airport or

any other airport operated by [HCAA]." *Id.* at 4. Nor did anyone ever suggest that adopting "Tampa Regional" would "allow Hernando County to benefit from any goodwill associated with [HCAA]". *Id.* It follows that this factor favors HERNANDO COUNTY.

### f.    There is no evidence of actual confusion

As HCAA admits, there is no evidence of any actual confusion. Also relevant is the fact that there is no evidence of actual confusion between HCAA's alleged marks and similar marks used by other entities for aviation services. For example, there is no suggestion of any confusion from the operation of the "Tampa North" airport located approximately 29 miles north/northeast of the Tampa International Airport. (*See* Silvernell Dec. ¶7). Nor was their any confusion during the roughly twenty years from 1985 until 2004 during which a third-party unaffiliated with HCAA operated an airport located off of State Road 54 in Odessa, Florida, under the name "Tampa Bay Executive Airport." (Silvernell Dec. ¶¶3, 5 & 6; Friedland Dec. ¶8).

### g.    The combination of factors heavily favor HERNANDO COUNTY

These factors together demonstrate that HCAA fails far short of its burden of establishing any likelihood of confusion between any of its marks and Defendant's BROOKSVILLE TAMPA REGIONAL AIRPORT mark. HCAA fails to put forth any evidence – much less sufficient evidence – that could carry its burden.

### C.    The Hillsborough County Aviation Authority Has Not and Cannot Establish a Likelihood of Success on the Merits of its False Advertising Claim

To prevail on its false advertising claim, HCAA must prove that the term "Brooksville Tampa Regional Airport" is deceptively false because: (1) there is no such thing as a "Tampa Region" or (2) if there is a Tampa Region, that Brooksville is not within the Tampa Region. Fatal to HCAA's effort is – again – its complete failure of proof.

HCAA proffers no consumer survey evidencing whether consumers recognize the phrase "Tampa Region" or, if so, whether they understand Brooksville to be within such a region. *See Scotts Co. v. United Industries Corp.,* 315 F.3d 264, 276 (4th Cir. 2002)("Consumer confusion 'is most often proved by consumer survey data'"); *United Indus. Corp. v. Clorox Corp.,* 140 F.3d 1175, 1183 (8th Cir. 1998)("while consumer surveys are not an absolute prerequisite at the preliminary injunction stage, "the movant *must* present evidence of deception"). Having failed to adduce any evidence of consumer deception, HCAA can only secure a preliminary injunction if the "Brooksville Tampa Regional Airport" name is literally false. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002)(To prevail the movant must present consumer survey evidence or some expert testimony or other evidence of consumer deception.).

HERNANDO COUNTY's airport name is not literally false. It clearly conveys that the airport is in Brooksville which is in the Tampa Region. HCAA incorrectly states that this must mean that the airport is in the city of Tampa. (Motion at 10). Such an argument is tautological and contradicted by HCAA's own naming practices. If all airports using the Tampa name must be in the City of Tampa, then HCAA's Tampa Executive Airport (the former Vandenberg Airport) is an example of false advertising because it is located in unincorporated Hillsborough County.[10]

The record in this case establishes that there is a Tampa Region and that Brooksville Tampa Regional Airport is within the region. The U.S. Census Metropolitan Statistical Area ("MSA") for this region includes Tampa-St. Petersburg Clearwater and Hernando County. (McHugh Dec. ¶¶8-9). HERNANDO COUNTY is a member of the Tampa Bay Partnership, a

---

[10]   Likewise, the former Tampa Bay Executive Airport and the current Tampa North aero park would be false advertisements. Yet, HCAA has never complained of these uses.

CEO-led regional economic development organization for the region which includes Hernando County. *Id.* Hernando County is deemed to be part of the Tampa Region by many governmental agencies such as Enterprise Florida and the Florida Department of Transportation. *Id.* Hernando County is a member of the Tampa Bay Regional Transportation Authority ("TBARTA"). *Id.* Finally, Hernando County is part of the Tampa Bay media market and is served by both the *Tampa Tribune* and the *Tampa Bay Times. Id.*

In the face of this record evidence establishing that HERNANDO COUNTY is part of the Tampa Region of Florida, HCAA cannot establish a likelihood of prevailing upon a claim of literally false advertising. Accordingly, the Motion as to false advertising should be denied.

### D.     The Remaining Factors Weigh Against Issuance of a Preliminary Injunction

#### 1.     HCAA fails to establish irreparable harm

As with the remainder of its Motion, HCAA seeks to rely upon presumptions and legal argument in lieu of actual evidence to establish irreparable harm. Stated simply, the record belies any suggestion of irreparable harm.

In the aftermath of *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006), in which the Supreme Court concluded that proof of patent infringement does not lead to a presumption of irreparable harm so as to automatically justify injunctive relief, the Eleventh Circuit has likewise questioned whether such a presumption of irreparable harm should arise in a trademark case. *See North American Medical Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1227-28 (11th Cir. 2008). The *Axiom Worldwide* Court declined to decide the issue. To date, the question remains open. *See Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1320 (11th Cir. 2010). The correct course is to decide the issue without reliance on the questionable presumption of irreparable harm. *Chanel, Inc. v. Mesadieu,* 2009 WL 2496586 at *7 (M.D. Fla. 2009).

The only evidence in the record bearing on the issue of irreparable harm is the delay by HCAA in pursuing preliminary injunctive relief. Prior to filing this action on November 1, 2012, HCAA voted to bypass the requirements of Chapter 164 of the Florida Statutes because of the supposed "irreparable" injury that HCAA would suffer under the Florida Conflict Resolution Act. Yet, HCAA waited three months before seeking a preliminary injunction. "[A] plaintiff's delay in seeking an injunction in a trademark case 'tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.'" *Seiko Kabushiki Kaisha v. Swiss Watch Intern., Inc.,* 188 F.Supp.2d 1350, 1355-56 (S.D. Fla. 2011); *accord Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 968 (2d Cir. 1995).

### 2.    The public interest weighs against the issuance of an injunction

As previously noted, there is a strong public policy interest in permitting the public and competitors to use geographically descriptive terms in their geographically descriptive manner. As established by the McHugh Declaration, HENRNADO COUNTY selected the Brooksville Tampa Regional Airport name for the legitimate purpose of informing the consuming public the geographic region in which the airport was located. Thus, the public interest would not be served by allowing HCAA to appropriate a geographic term to the determinant of legitimate competitors and the public at large. *See New York Style Bagel Chip Co. v. That's Entertainment, Inc.,* 1992 WL 46854 at *11 (E.D. Pa. 1992)(finding that the public interest would be disserved by enjoining the use of the geographic term "New York" for bagel products).

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

_Joseph J. Weissman_
FRANK R. JAKES, FBN #372226
(Trial Counsel)
JOSEPH J. WEISSMAN, FBN #0041424
JOHNSON, POPE, BOKOR,
  RUPPEL & BURNS, LLP
403 E. Madison Street, Suite 400
Tampa, FL 33602
Telephone:  (813) 225-2500
Facsimile:  (813) 223-7118
E-Mail:  frankj@jpfirm.com

and

JON A. JOUBEN, FBN #149561
Hernando County Attorney's Office
20 N. Main Street, Room 462
Brooksville, FL 34601-2817
Telephone: (352) 754-4122
Facsimile: (352)754-4001
E-mail: JJouben@co.hernando.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the CM/ECF System of the Clerk's Office of the United States District Court, which will send a copy to the following:

> Stefan Stein
> Michael J. Colitz, III
> Debra Deardourff Faulk
> GrayRobinson, P.A.
> 401 E. Jackson Street, Suite 2700
> Tampa, FL  33602
>
> Gigi Garber Rechel
> General Counsel
> Hillsborough County Aviation Authority
> P.O. Box 22287
> Tampa, FL  33622

on this 19th day of February, 2012.

*Joseph J. Weissman*
FRANK R. JAKES, FBN #372226
JOSEPH J. WEISSMAN, FBN #0041424
JOHNSON, POPE, BOKOR,
  RUPPEL & BURNS, LLP
403 E. Madison Street, Suite 400
Tampa, FL 33602
Telephone:  (813) 225-2500
Facsimile:  (813) 223-7118
E-Mail:  frankj@jpfirm.com

1318687